# C ARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

CHARLES C. CARELLA
BRENDAN T. BYRNE
PETER G. STEWART
ELLIOT M. OLSTEIN
ARTHUR T. VANDERBILT, II
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

JAMES T. BYERS
DONALD F. MICELI
A. RICHARD ROSS
KENNETH L. WINTERS
JEFFREY A. COOPER
CARL R. WOODWARD, III
MELISSA E. FLAX
DENNIS F. GLEASON
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
KHOREN BANDAZIAN
LINDSEY H. TAYLOR

JAMES D. CECCHI (1933-1995)
JOHN G. GILFILLAN III (1936-2008)

**5 BECKER FARM ROAD**
**ROSELAND, N.J.  07068-1739**
**PHONE (973) 994-1700**
**FAX (973) 994-1744**
**www.carellabyrne.com**

RICHARD K. MATANLE, II
FRANCIS C. HAND
AVRAM S. EULE
RAYMOND W. FISHER
⎯⎯⎯⎯
OF COUNSEL

RAYMOND J. LILLIE
WILLIAM SQUIRE
ALAN J. GRANT°
MARC D. MICELI
RAYMOND E. STAUFFER°
STEPHEN R. DANEK
ERIC MAGNELLI
DONALD A. ECKLUND
VINCENZO M. MOGAVERO
AUDRA E. PETROLLE
°MEMBER N.Y. BAR ONLY

July 11, 2011

Honorable Michael A. Shipp
United States Magistrate Judge
United States District Court
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:  *Botton v. Ness Technologies, Inc., et al*; 2:11-cv-03950 (SRC)(MAS)

Dear Judge Shipp:

We represent the Plaintiff, Nissim Botton, in the above referenced matter and write to advise the Court of Plaintiff's urgent need for limited expedited discovery in advance of a preliminary injunction of the shareholder vote being challenged by this Action. In this regard, Plaintiff respectfully requests a telephonic conference with Your Honor at Your Honor's earliest convenience.

## Background

This case concerns an attempt by Citi Venture Capital International ("CVCI"), through its affiliates Jersey Holding and Jersey Acquisition Corporation, a wholly-owned subsidiary of Jersey Holding, to acquire all of the outstanding shares of Ness which CVCI did not already own, in an all cash transaction valued at approximately $307 million (the "Proposed Transaction"). Under the terms of the definitive Agreement and Plan of Merger announced June 10, 2011, holders of Ness common stock will receive $7.75 in cash for each share of common stock they hold.

On June 27, 2011, a one-time competing bidder with Ness, identified as "Bidder D" in the Proxy, sent the Company a scathing letter accusing Ness of violating the exclusivity and confidentiality agreements entered between the two parties, along with other specific accusations not disclosed in the Proxy. According

July 11, 2011
Page 2

to the Proxy, Bidder D offered far more favorable terms under a proposed merger agreement which would have provided a generous 30 day "go shop" period and a termination fee of just $3 million, compared to the termination fee of over $8 million agreed to in the Merger Agreement with CVCI.  However, the merger negotiations with Bidder D were mysteriously abandoned when the Individual Defendants rejected further consideration of Bidder D's proposal.

On June 30, 2011, the Company filed the Proxy with the Securities and Exchange Commission as a first attempt to move forward to schedule a shareholder vote regarding the Proposed Transaction.  In the Proxy, the board of directors of Ness recommended that Ness shareholders vote in favor of the Proposed Transaction.  However, the Proxy fails to provide material information necessary to a shareholders ability to cast an informed vote.

Critically, in connection with the Proposed Transaction, Defendants have omitted from and/or misrepresented in the Proxy material information necessary for shareholders to make an informed decision as to whether to vote their shares in favor of consummating the Proposed Transaction in violation of §14(a) and §20(a) of the Securities Exchange Act of 1934.  Without the material information, Plaintiff and all other Ness shareholders will be denied a fair opportunity to make an informed decision as to these matters.

Plaintiff's Complaint lays out in great detail the material information that has been omitted from the Proxy.  Among other things, the Proxy does not describe in sufficient detail the sales process leading up to the Proposed Transaction or the flaws that might have permeated the sales process.  For example, the Proxy fails to provide an adequate explanation as to why the Board chose to abandon negotiations with Bidder D, despite the superior terms under a putative merger agreement proposed by Bidder D, and instead rejected any further consideration of its proposal.  More troubling, the Proxy does not disclose the why Bidder D is accusing Ness of violating its exclusivity and confidentiality agreements, or the specific accusations made by Bidder D in the letter dated June 27, 2011, which is not attached to the Proxy.  This information is material to shareholders ability to cast an informed vote.

Moreover, the analyses in support of the fairness opinion prepared by Jefferies & Company, Inc. ("Jefferies"), who acted as the financial advisor to the Special Committee, is plagued by materially false statements and omissions fails to disclose information which would allow shareholders to intelligently determine whether or not they should vote in favor of the Proposed Transaction.

Furthermore, the analyses in support of the fairness opinion prepared by Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") who acted as financial advisor to the Board, is similarly plagued by materially false

July 11, 2011
Page 3

statements and omissions and fails to disclose information which would allow shareholders to intelligently determine whether or not they should vote in favor of the Proposed Transaction.

In addition, while the Proxy discloses certain Company projections, it fails to disclose Ness' unlevered free cash flows or even the key inputs necessary to reach free cash flows, which are critical to understanding the basis for those projections as well as the projections for years 2011-2015 used by both Jefferies and BofA Merrill Lynch in their analyses.

The omitted information is highly relevant and material to Ness shareholders and these shareholders cannot be expected to make a fully-informed decision regarding the Proposed Transaction without this vital information.

Accordingly, Plaintiff has brought suit alleging that the Individual Defendants breached the fiduciary duties they owe to Plaintiff and the other shareholders of the Company by, *inter alia*, preventing them from receiving the fair value of their interest in the Company and depriving them of full and fair disclosures. Plaintiff alleges that he and the Company's other shareholders will suffer irreparable harm if the Individual Defendants continue to breach their fiduciary duties. For this reason, Plaintiff requests leave of this Court to obtain discovery from the defendants on an expedited basis in anticipation of moving for a preliminary injunction to halt the shareholder vote regarding the Proposed Transaction. Indeed, following the shareholder vote on the Proposed Transaction, Plaintiff and absent class members will be forever foreclosed from making a meaningful, informed decision concerning the Proposed Transaction.

Plaintiff intends to move the Court for injunctive relief that enjoins Defendants from consummating the Proposed Transaction until Defendants cure the defects and provide shareholders with all material information concerning the Proposed Transaction. Time is of the essence because Defendants are moving quickly to consummate the Proposed Transaction. Accordingly, if the normal course of discovery is not altered, Plaintiff may not have an opportunity to present this Court with the record required for the injunctive relief sought.

### Expedited Discovery Sought

1. Production of minutes from any meetings attended by any member of Ness' Board of Directors at which the Proposed Transaction or any other potential strategic transactions were discussed, including any discussions regarding voting on the Proposed Transaction.

2. Production of all communications or documents concerning the

July 11, 2011
Page 4

>financial advisors retained in connection with the Proposed Transaction. This request includes, but is not limited to, retainer agreements, fairness opinions, bankers' books and any drafts thereof, presentation documents, and documents or information sufficient to identify the assumptions and calculations that formed the bases for the financial advisors' analyses.

3. Production of all communications between Ness, CVCI and their financial advisors related to the Proposed Transaction, as well as any and all bidders interested in a potential acquisition of Ness.

4. Production of all financial projections prepared by Ness' management during the past 12 months, including but not limited to projections provided to any investment bankers or financial advisors in connection with any fairness opinion(s) provided in connection with the Board's consideration of the Proposed Transaction.

5. Production of all presentation documents prepared by Ness' management or any bankers or financial advisors referenced in Paragraph 2, concerning the Proposed Transaction or any other potential strategic transaction, merger, or acquisition.

6. Production of any valuations prepared assessing the value of Ness as an enterprise, or Ness' stock, in the past 12 months.

7. Production sufficient to identify any benefits to be received by any officer, director, or member of management of Ness in connection with the Proposed Transaction, including, but not limited to, stock grants, retention payments, and consulting agreements.

8. Deposition of the person most knowledgeable with respect to the Proposed Transaction and any other potential strategic transactions considered by the Board during the past 12 months.

9. Deposition of the person most knowledgeable regarding the financial projections of Ness.

10. Deposition of the person most knowledgeable from Jefferies concerning the Proposed Transaction.

11. Deposition of the person most knowledgeable from BofA Merrill Lynch concerning the Proposed Transaction

July 11, 2011
Page 5

Such discovery is relatively limited and will not unduly burden the Defendants.[1]  Counsel for Plaintiff and the putative class will, of course, cooperate with counsel for the Defendants to reasonably accommodate the difficulties presented by expedited discovery.

### **Legal Standard**

Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred as required by Rule 26(f).  *Quest Commc'ns Int'l Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo. 2003); *Avyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D. N.Y. 2005).  "However courts may expedite discovery before the Rule 26(f) conference upon a showing of good cause."  *Quest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419.  Good cause exists where the need for expedited discovery, in consideration of

---

[1] Defendants may try to advance an argument that PSLRA stay of discovery is warranted if they file a motion to dismiss. While the PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss...", 15 U.S.C. §78u-4(b)(3)(B), the purpose and intent of this stay is:  "(1) to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that the corporate defendants will settle those actions rather than bear the high costs of discovery; (2) or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint."  Courts have lifted the discovery stay where these concerns do not exist. *See Tobias Holdings, Inc. v. Bank United Corp.,* 177 F. Supp. 2d 162, 167 (S.D.N.Y. 2001) (citing *In re Grand Casinos Sec. Litig.,* 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("If…Congress had intended an absolute stay on discovery, then Congress would not have authorized a judicial reprieve from such a stay, when a reprieve is needed.")); *In re WorldCom, Inc. Sec. Litig.,* 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (lifting PSLRA stay, where the plaintiffs were not engaged in a fishing expedition or an abusive strike suit, because they did not act in contravention of the fundamentals underlying the PSLRA discovery stay); *see also In re Tyco Int'l, Ltd. Multidistrict Litig.*, MDL No. 02-1335-B, 2003 WL 23830479 (D.N.H. January 29, 2003); *In re Royal Ahold N.V. Sec. & ERISA Litig.,* 220 F.R.D. 246, 249 (D. Md. 2004).  Just as the stay provision is in place to prevent frivolous lawsuits from going forward, conversely, the stay cannot be used by defendants as a procedural tactic to prevent litigation from occurring in a forum unfavored by defendants. The PSLRA permits a lifting of the stay to allow discovery to proceed "upon the motion of any party that [a] particularized discovery is necessary [b] to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B).  Here, particularized discovery is requested to enable Plaintiff to seek a preliminary injunction in advance of the shareholder vote with supporting evidence to allow for the protection of the Ness shareholders.

July 11, 2011
Page 6

the administration of justice, outweighs the prejudice to the responding party. *Semitoole Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002). The good cause standard may be satisfied where a party seeks a preliminary injunction. *Quest Commc'ns Int'l, Inc.*, 213 F.R.D. at 419.

In New Jersey, courts have generally employed one of two standards for determining the appropriateness of expedited discovery. *Better Packages, Inc. v. Zheng,* 2006 WL 1373055, 2 (D.N.J. 2006). The first is the more formal analysis outlined in *Notaro v. Koch,* 95 F.R.D. 403 (S.D.N.Y. 1982). *Id.* The *Notaro* standard is very similar to a preliminary injunction analysis and looks more closely at the merits of the requests. *Id.* The second is the reasonableness standard, which requires the party seeking discovery to prove that the requests are reasonable under the circumstances. *Id.*

Under the *Notaro* standard, the moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Id.*

The reasonableness standard is considerably more liberal than the *Notaro* standard and has evolved considerably recently. *Better Packages, Inc.* at 3. Application of this standard depends on the actual circumstances of each case, as well as consideration of certain factors such as a pending preliminary injunction hearing, the need for the discovery and the breadth of the requests. *Id.* Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings. *Id.* If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted. *Id.* The court should examine the appropriateness of a request for expedited discovery by weighing the need for the discovery at that point in the litigation with the breadth of the discovery requests. *Id.*

A number of courts have applied a "good cause" test. This test weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party. *Id.* The factors considered include how far in advance of the formal start of discovery the request is made, whether the discovery are requests narrowly tailored, the purpose of the requested early discovery, whether the discovery burdens the defendants, and whether the defendants are able to respond to the requests in an expedited manner. *Id.*

In opting to apply the reasonableness standard in *Better Packages, Inc.,* the court noted that a large part of the reasoning behind the courts heightened

July 11, 2011
Page 7

standard for expedited discovery in *Notaro* was that the nonmoving party needed protection from plaintiff's discovery requests at such an early stage of the litigation and the matter did not involve a pending preliminary injunction hearing. *Id*.

In the instant case, while Plaintiff submits he should prevail under either standard, the Court should apply the reasonableness standard in determining the appropriateness for Plaintiff's limited expedited request for discovery. Where as here, there are material deficiencies in the documents presented to shareholders courts have routinely granted motions for expedited proceedings finding that the threat of an uninformed shareholder decision constitutes irreparable harm. *See Grimes v. Vitalink Communications Corp.*, 17 F.3d 1553, 1555 (3d Cir. 1994) (granting expedited discovery in suit concerning allegations that Defendants breached their fiduciary duties in approving a merger).

Plaintiff must quickly develop the evidentiary basis for a preliminary injunction. Plaintiff seeks discovery that will allow him to pursue injunctive relief on a more complete record and has sought to limit any burden or hardship on Defendants by requesting discovery that should be easily accessible and readily available to Defendants. As such, the burden on Defendants in producing such documents on an expedited basis will be minimal.

Accordingly, Plaintiff respectfully requests that the Court schedule a conference call on at Your Honor's earliest convenience. We appreciate the Court's attention to this urgent matter and remain available at Your Honor's convenience.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.


/s/ James E. Cecchi

JAMES E. CECCHI

cc:   Juan E. Monteverde, Esq.
      Scott A. Bursor, Esq.
      Thomas Fleming, Esq.
      John Donovan, Esq.
      Carmine Boccuzzi, Esq.