# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NISSIM BOTTON, On Behalf of Himself and All Others Similarly Situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | C.A. No.: 2:11-cv-03950(SRC)(MAS) |
| NESS TECHNOLOGIES, INC., AHARON FOGEL, AJIT BHUSHAN, SATYAM C. CHERUKURI, SASHI GERLITZ, P. HOWARD EDELSTEIN, GABRIEL EICHLER, DAN S. SUESSKIND, MORRIS WOLFSON, CITI VENTURE CAPITAL INTERNATIONAL, JERSEY HOLDING CORPORATION, AND JERSEY ACQUISITION CORPORATION, | : : : : : : : : : : | |
| Defendants. | : : | |

## MEMORANDUM OF LAW ON BEHALF OF THE NESS DEFENDANTS IN SUPPORT OF THE PSLRA AUTOMATIC STAY AND IN OPPOSITION TO <u>PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY</u>

Robert J. Del Tufo
Andrew Muscato
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
(A Delaware Limited Liability Partnership)
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
Fax:  (212) 735-2000
Andrew.Muscato@skadden.com
Robert.DelTufo@skadden.com

*Attorneys for Defendants Ness Technologies, Inc., Satyam C. Cherukuri, Issachar "Sachi" Gerlitz, Morris Wolfson, Dan S. Suesskind, P. Howard Edelstein and Gabriel Eichler*

## TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

      A.    The Parties ............................................................................... 3

      B.    CVCI Makes An Initial Inquiry And Ness Forms A Special Committee Selected From The Ness Board's Majority Of Disinterested And Independent Directors. .................................... 4

      C.    The Special Committee Runs An Eleven-Month Process And Repeatedly Asks For More Money. ............................................ 6

      D.    Bidder D Fails To Finalize An Agreement And CVCI Makes A New Inquiry That Blows Out The Competition. ........................... 7

      E.    Nature And State Of The Litigation Proceedings. ...................... 8

ARGUMENT ......................................................................................................... 9

   I.    UNDER THE PSLRA, PLAINTIFF IS NOT ENTITLED TO ANY DISCOVERY – LET ALONE EXPEDITED DISCOVERY. ................. 9

   II.    PLAINTIFF FAILS TO JUSTIFY EXPEDITION UNDER ANY STANDARD. ............................................................................. 15

      A.    Plaintiff Fails To Show Any Irreparable Harm Because Money Damages Are Sufficient To Remedy Any Alleged Harm. ....................... 17

      B.    Plaintiff Fails To Allege Any Material Omitted Fact In The Preliminary Proxy. ............................................................... 19

   III.   PLAINTIFF'S BROAD DISCOVERY REQUESTS PRECLUDE EXPEDITION. ...................................................................... 22

   IV.   THE EQUITIES FAVOR DEFENDANTS. ..................................... 25

CONCLUSION .................................................................................................... 27

i

## TABLE OF CASES AND AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*In re 3Com S'holders Litig.*,
C.A. No. 5067-CC, 2009 WL 5173804 (Del. Ch. Dec. 18, 2009)........................18, 20, 22

*5ifth Element Creative, LLC v. Kirsch*,
C.A. No. 5:10-cv-255-KKC, 2010 WL 4102907
(E.D. Ky. Oct. 18, 2010) ...............................................................................................17

*Advent Sys. Ltd. v. Unisys Corp.*,
C.A. No. 88-3100, 1988 WL 46258 (E.D. Pa. May  10, 1988) ........................................23

*Badger v. Stryden Corp.*,
C.A. No. 09-3619, 2010 WL 392352
(E.D. Pa. Jan. 26, 2010) ................................................................................................16

*Benbow v. Aspen Tech., Inc.*,
C.A. No. Civ. A. 02-2881, 2003 WL 1873910
(E.D. La. Apr. 11, 2003) ................................................................................................10

*In re Best Lock Corp. S'holder Litig.*,
845 A.2d 1057 (Del. Ch. 2001).......................................................................................22

*Better Packages, Inc. v. Zheng*,
No. Civ. A. 05-4477(SRC), 2006 WL 1373055
(D.N.J. May 17, 2006) ................................................................................15, 16, 17, 22

*Bug Juice Brands, Inc. v. Great Lakes Bottling Co.*,
No. 1:10-cv-229, 2010 WL 1418032
(W.D. Mich. Apr. 6, 2010)..............................................................................................22

*In re Cardinal Health, Inc.*,
365 F. Supp. 2d 866 (S.D. Ohio 2005) ...........................................................................10

*In re Carnegie Int'l Corp. Sec. Litig.*,
107 F. Supp. 2d 676 (D. Md. 2000)..................................................................................11

*Caston v. Hoaglin*,
C.A. No. 2:08-cv-200, 2009 WL 1687927
(S.D. Ohio June 12, 2009) ..............................................................................................23

*In re Checkfree Corp. S'holders Litig.*,
C.A. No. 3193-CC, 2007 WL 3262188 (Del. Ch. Nov. 1, 2007) .....................................21

*In re Cheyenne Software, Inc.*,
    C.A. No. 14941, 1996 WL 652765 (Del. Ch. Nov. 7, 1996)............................................26

*Crane v. Varian Semiconductor Equip. Assocs.*,
    C.A. No. 11-11236-RJS (D. Mass. July 18, 2011) ..........................................................24

*In re DPL Inc., Sec. Litig.*,
    247 F. Supp. 2d 946 (S.D. Ohio 2003) .............................................................................11

*Entm't Tech. Corp. v. Walt Disney Imagineering*,
    No. Civ. A. 03-3456, 2003 WL 22519440
    (E.D. Pa. Oct. 2, 2003)..............................................................................................16, 17

*Fisher v. Kanas*,
    06-CV-1187(ADS)(ETB), 2006 WL 2239038
    (E.D.N.Y. Aug. 4, 2006) ..................................................................................................14

*In re Gen. Motors (Hughes) S'holder Litig.*,
    No. Civ. A. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005),
    *aff'd*, 897 A.2d 162 (Del. 2006) .....................................................................................20

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
    C.A. No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007)................................22

*Gucci Am., Inc. v. Daffy's Inc.*,
    No. Civ. A. 00-4463, 2000 WL 1720738
    (D.N.J. Nov. 14, 2000)....................................................................................................16

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
    No. MDL 05-1708DWFAJB, Civ. 06-363DWFAJB,
    2006 WL 763212 (D. Minn. Mar. 24, 2006) ...................................................................13

*Howing Co. v. Nationwide Corp.*,
    972 F.2d 700 (6th Cir. 1992) ...........................................................................................14

*In re Initial Pub. Offering Sec. Litig.*,
    236 F. Supp. 2d 286 (S.D.N.Y. 2002)..............................................................................11

*Leone v. King Pharms., Inc.*,
    No. 2:10-CV-230, 2010 WL 4736271 (E.D. Tenn. Nov. 16, 2010)..........13, 14, 15, 16, 17

*In re Lord Abbett Mutual Funds Litig.*,
    533 F.3d 248 (3rd Cir. 2009) .............................................................................................9

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720 (Del. Ch. 1999), *aff'd mem. sub nom.*
    *Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) .......................................................20

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    11 A.3d 1175 (Del. Ch. 2010).........................................................................21

*In re Marvell Tech. Grp. Ltd. Derivative Litig.*,
    C.A. No. C-06-03894 RMW, 2007 WL 1545194
    (N.D. Cal. May 29, 2007)...........................................................................10

*McMillan v. Intercargo Corp.*,
    C.A. No. 16963, 1999 WL 288128 (Del. Ch. May 3, 1999) ............................25

*Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*,
    917 F. Supp 717 (S.D. Cal. 1996).................................................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
    194 F.R.D. 618 (N.D. Ill. 2000)....................................................................17

*Minzer v. Keegan*,
    218 F.3d 144 (2d Cir. 2000).........................................................................19

*MRP, Inc. v. Moreman*,
    C.A. No. 3:10-CV-707, 2011 WL 61177
    (W.D. Ky. Jan. 7, 2011)..............................................................................17

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002).......................................................................10

*In re Netsmart Technologies, Inc. Shareholders Litigation*,
    924 A.2d 171 (Del. Ch. 2007).......................................................................21

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) ...................................................................16

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000).........................................................................19

*In re Pennaco Energy, Inc. S'holders Litig.*,
    787 A.2d 691 (Del. Ch. 2001).......................................................................25

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*,
    213 F.R.D. 418 (D. Colo. 2003) ...................................................................18

*Rosenblatt v. Getty Oil Co.*,
    493 A.2d 929 (Del. 1985) ............................................................................19

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    220 F.R.D. 246 (D. Md. 2004)......................................................................12

*Sarantakis v. Gruttadauria*,
    No. 02 C. 1609, 2001 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) ...............................11

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
    208 F.R.D. 273 (N.D. Cal. 2002) ......................................................................................16

*Share Corp. v. Momar, Inc.*,
    No. 10-CV-109, 2010 WL 724321 (E.D. Wis. Feb. 26, 2010) .........................................23

*Solash v. Telex Corp.*,
    C.A. Nos. 9518, 9528 & 9525, 1988 WL 3587
    (Del. Ch. Jan. 19, 1988) ...................................................................................................26

*Special Situations Cayman Fund, L.P. v. Dot Com Entm't Grp., Inc.*,
    No. 03-CV-0811E(F), 2003 WL 23350128
    (W.D.N.Y. Dec. 5, 2003) ..................................................................................................18

*Steamfitters Local Union 447 ex rel. inVentive Health, Inc. v. Walter*,
    C.A. No. 5492-CC (Del. Ch. June 21, 2010)
    (TRANSCRIPT) ................................................................................................................20

*Stroud v. Grace*,
    606 A.2d 75, 84 (Del. 1992) .............................................................................................21

*Tobias Holdings, Inc. v. Bank United Corp.*,
    177 F. Supp. 2d 162 (S.D.N.Y. 2001) ..........................................................................11, 12

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ..........................................................................................................19

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    No. MDL 02-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003) .................................12

*Wayne Cnty. Emps.' Ret. Sys. v. Corti*,
    954 A.2d 319 (Del. Ch. 2008) ...........................................................................................19

*Wilson v. Great Am. Indus., Inc.*,
    979 F.2d 924 (2d Cir. 1992) ..............................................................................................14

*Winer Family Trust v. Queen*,
    No. 03-4318, 2004 WL 350181 (E.D. Pa. Feb. 6, 2004) ..................................................12

*In re Worldcom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...............................................................................12

## AUTHORITIES

15 U.S.C. § 78u-4(a)(2) ...............................................................................................................10

15 U.S.C. § 78u-4(a)(3)(A) ............................................................................................10

15 U.S.C. § 78u-4(a)(16) ...............................................................................................10

15 U.S.C. § 78u-4(a)(7) .................................................................................................10

15 U.S.C. § 78u-4(b)(3)(B) ............................................................................................10

Fed. R. Civ. P. 26(c) ......................................................................................................15

Fed. R. Civ. P. 26(d)(1) ................................................................................................14

8 *Del. C.* § 262 ..............................................................................................................13

Defendants Ness Technologies Inc., ("Ness"), Satyam C. Cherukuri, Issachar "Sachi" Gerlitz,[1] Morris Wolfson, Dan S. Suesskind, P. Howard Edelstein and Gabriel Eichler (the "Independent Directors," and, together with Ness, the "Ness Defendants") hereby submit this Memorandum of Law in opposition to both Plaintiff's procedurally improper letter filed on July 11, 2011 requesting expedited proceedings (the "Letter"), and Plaintiff's Brief in Support of Application for Expedited Discovery and Schedule for Preliminary Injunction Hearing, filed on July 15, 2011 (the "Op. Br."), in connection with his Class Action Complaint for Violations of the Federal Securities Laws and for Breaches of Fiduciary Duties (the "Complaint").

In addition, the Ness Defendants respectfully request that this Court decline to lift the automatic stay under The United States Private Securities Litigation Reform Act of 1995 (the "PSLRA") pending resolution of their forthcoming motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

On June 10, 2011, Ness announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Jersey Acquisition Corporation, an affiliate of Citi Venture Capital International ("CVCI"), will merge with and into Ness (the "Merger"). Under the Merger Agreement, Ness stockholders stand to receive $7.75 in cash for each share of Ness stock they own or approximately $307 million in total (the "Proposed Transaction"). This represents a 68% premium over the market price of Ness's stock on the last trading day before a news article was published indicating that Ness was exploring a sale. This Proposed Transaction is the result of an eleven-month process in which **twenty-seven** additional potential acquirers were contacted, five bidders emerged, and an independent special committee

---

[1]   Plaintiff mistakenly identifies Mr. Gerlitz as "Sashi" in his Complaint.

was formed (the "Special Committee"), which obtained a 41% increase in the initial price and recommended the Proposed Transaction to the Ness board of directors (the "Ness Board").  In addition, the Proposed Transaction was reviewed by the financial advisors of both the Special Committee and the Ness Board and those financial advisors concluded that the Proposed Transaction was fair to the Ness stockholders.

Importantly, the Merger will not occur unless the majority of all outstanding Ness shares vote for its approval.  Thus, even if the price being offered in the Merger were unfair – which it is not – Ness stockholders can fully protect themselves by simply voting it down. Moreover, even if stockholders holding the majority of outstanding shares accept the price and approve the Merger, any stockholder who disagrees will still have a right to appraisal under the Merger Agreement and Delaware law.

Nevertheless, Plaintiff filed the Complaint alleging that Ness's directors breached their fiduciary duties by agreeing to the Merger at an unfair price and that CVCI aided and abetted that breach by offering an unfair price.  Additionally, in an effort to differentiate himself from the eight lawsuits that had already been filed in Delaware asserting such claims, the Plaintiff alleges additional state law disclosure claims against all defendants (including aiding and abetting against CVCI) and federal law disclosure claims under Section 14(a) of The Securities Exchange Act of 1934 (the "Exchange Act") against the Ness Defendants.  As explained below, Plaintiff's Complaint is subject to the automatic stay of discovery granted under the PSLRA pending determination of the forthcoming motion to dismiss (the "Motion to Dismiss") which will be filed shortly by the Ness Defendants and the remaining defendants (the "CVCI Defendants," together with the Ness Defendants, "Defendants").

Thus, Plaintiff is not entitled to proceed with any discovery at all – let alone expedited discovery – until the Motion to Dismiss is decided.  In spite of the automatic stay, Plaintiff seeks to impose the substantial burden of expedited and broad discovery on the defendants – all while failing to justify expedition.  Plaintiff's Letter and brief do not satisfy any standard for expedition for four reasons that will be more fully explained in Defendants' Motion to Dismiss:  <u>First</u>, the circumstances of the case do not justify expedition.  Plaintiff's claims can be boiled down to one recurring issue – price.  <u>Second</u>, Plaintiff's disclosure claims are without merit.  Plaintiff asks "why" things were done by the Ness Board and quibbles with the bankers' analysis, but fails to identify a single material fact that was not disclosed.  <u>Third</u>, Plaintiff's discovery requests are extremely broad.  Even if expedited discovery could be justified here – which it can not – the discovery requested far exceeds the scope permitted by other courts.  <u>Fourth</u>, while Plaintiff can demonstrate no prejudice in litigating at a normal pace, the Ness Defendants will be forced to incur substantial expense and suffer undue hardship in reviewing and producing what are likely to be tens of thousands of documents under Plaintiff's broad discovery requests.  Because Plaintiff's disclosure claims are meritless, there is no prejudice to Plaintiff in litigating under a regular schedule.

For these reasons, as discussed in more detail below, the Ness Defendants respectfully submit that the expedited discovery sought by Plaintiff's Letter and brief should be denied.

## STATEMENT OF FACTS

### A.    The Parties

Defendant Ness is a Delaware corporation, with world headquarters in Tel Aviv, Israel.  (Compl. ¶ 13)  Ness operates in North America, Europe, Israel and India and is publicly

3

traded on the NASDAQ Global Select Market and the Tel Aviv Stock Exchange under the symbol "NSTC."  (Compl. ¶¶ 13, 35)

Defendant CVCI is a Delaware corporation specializing in private equity investments and investment advisory services.  (Compl. ¶ 24)

Defendants Jersey Acquisition Corporation and Jersey Holding Corporation are Delaware Corporations.  Jersey Acquisition Corporation is a wholly-owned subsidiary of Jersey Holding Corporation, which is an affiliate of CVCI.  (Compl. ¶¶ 25, 26)

Defendant Ajit Bhushan is a member of the Ness Board and is one of the managing directors of CVCI.  (Compl. ¶ 15)

Defendant Issachar "Sachi" Gerlitz is a member of the Ness Board as well as Ness's president and CEO.  (Compl. ¶ 17)  He has not negotiated any continued employment with CVCI.  (Compl. ¶ 53)

Defendant Morris Wolfson is a member of the Ness Board and is the founder of Ness.  (Compl. ¶ 21)

The remaining five defendants comprise the rest of the Ness Board and have no affiliation with Ness or CVCI other than their presence on the Ness Board.  (Compl. ¶¶ 14, 16, 18-20)[2]

**B.     CVCI Makes An Initial Inquiry And Ness Forms A Special Committee Selected From The Ness Board's Majority Of Disinterested And Independent Directors.**

On July 16, 2010, CVCI conveyed to Ness's Board an unsolicited indication that CVCI would be interested in exploring a possible transaction in which affiliated funds of CVCI

---

[2]     The Plaintiff names Aharon Fogel as a defendant, stating that he has been a member and Chairman of the Ness Board since 1999.  (Compl. ¶ 14)  However, Mr. Fogel retired from the Ness Board effective January 31, 2011.  (Ness Technologies, Inc., Current Report (Form 8-K) (Feb. 2, 2011))

would pay $5.50 to $5.75 per share to acquire all of Ness's outstanding equity securities and, assuming Ness would be willing to move quickly and efficiently toward a transaction, Ness would be permitted to employ a limited go-shop process after the execution of a definitive agreement (the "July 16 Inquiry"). (Ness Technologies, Inc., Proxy Statement (Schedule 14A) at 21 (June 30, 2011), attached to the Certification of Andrew Muscato as Exhibit A) (cited hereinafter as "Prelim. Proxy")  Following the July 16 Inquiry, the Ness Board determined that Mr. Bhushan must be excluded from any discussions surrounding the July 16 Inquiry or any process effectuated as a result of the July 16 Inquiry. (Prelim. Proxy at 21)  To date, Mr. Bhushan has not been present for any negotiations, presentations or decisions regarding CVCI or any other potential strategic investor or buyer throughout the Ness sale process.[3]  (Prelim. Proxy at 21)  The Ness Board established the Special Committee comprised of three disinterested and independent directors, Messrs. Cherukuri, Edelstein, and Wolfson . (Prelim. Proxy at 21)[4]  The Special Committee hired independent legal and financial advisors, Ropes & Gray LLP and Jefferies & Co. ("Jefferies").  (Prelim. Proxy at 22)  The Ness Board was advised by Olshan, Grundman, Frome, Rosenzweig & Wolosky LLP as its legal advisor and by Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BoA Merrill Lynch") as its financial advisor.  (Prelim. Proxy at 20)

---

[3]   Thus, any references to the "Ness Board" in the context of the July 16 Inquiry or any sale process do not include Mr. Bhushan.

[4]   The Special Committee was originally four directors; however, Mr. Suesskind resigned from the Special Committee after he discovered that he was affiliated with a limited partner of one of the potential bidders.  (Prelim. Proxy at 23)  In addition, Mr. Wolfson discovered that his family held insignificant and passive investment interests in another bidder, identified as Bidder D in the Preliminary Proxy, but the Special Committee determined that any interest he may be imbued with was too insignificant to affect his ability to serve on the Committee. (Prelim. Proxy at 28)

**C.      The Special Committee Runs An Eleven-Month Process And Repeatedly Asks For More Money.**

The Special Committee began its work by asking CVCI for more money.  (Prelim. Proxy at 22)  CVCI declined to consider any potential transaction above a $0.25 increase from the range indicated in the July 16 Inquiry, and on September 22, 2010 CVCI withdrew its previously submitted indication of interest in exploring a potential transaction.  Subsequently, the Special Committee directed Jefferies to contact other potential strategic and financial third-party buyers to determine whether there was interest in a transaction.  (Prelim. Proxy at 23)  Jefferies contacted twenty-seven additional potential strategic and financial buyers.  (Prelim. Proxy at 23)  Of those twenty-seven, Ness entered into confidentiality agreements with three – named in the Preliminary Proxy as Bidder A, Bidder B and Bidder C.  (Prelim. Proxy at 23)  In the Fall of 2010, the three bidders stated that they would be interested in acquiring Ness at prices ranging from $6.40 to $6.70 per share.  (Prelim. Proxy at 23)

In response to a December 10, 2010 Israeli newspaper article that reported Ness was in talks with several investment funds, two things happened:  Ness's stock price jumped from $4.60 to $5.20 and a fourth bidder (referred to as Bidder D in the Preliminary Proxy) emerged with an initial indication of interest of $6.50 to $7.00 per share.  (Prelim. Proxy at 24)  At the same time, Bidder C withdrew from discussions because it could not effect a transaction without a partner.  (Prelim. Proxy at 24)  Throughout January, February and early March 2011, Ness continued to negotiate with Bidders A, B and D.  (Prelim. Proxy at 24-25)  During this time period, the Special Committee repeatedly pressed the bidders to raise the offering price and Bidders A, B and D submitted several rounds of revised bids, with the last revised proposals indicating purchase prices of $7.30, $7.00 and $7.30 per share, respectively.  (Prelim. Proxy at 25)  However, in early March 2011, Bidder B dropped out because it could not submit a

competitive revised bid.  (Prelim. Proxy at 25)  Similarly in mid-March 2011, Bidder A indicated

it too was unwilling to increase its $7.30 offer price.  (Prelim. Proxy at 26)  This left only Bidder

D, who agreed to increase its price to $7.40 a share in exchange for the Special Committee

recommending an exclusivity agreement to the Ness Board.  (Prelim. Proxy at 26)

On March 16, 2011, Ness entered into an exclusivity agreement with Bidder D.

The exclusivity agreement included a thirty-day period during which Ness could not solicit

indications of interest from other potential bidders.  (Prelim. Proxy at 26)  In exchange for

further concessions from Bidder D, the Ness Board granted multiple extensions to the exclusivity

agreement.  (Prelim. Proxy at 27)  However, after three separate extensions and almost two

months of exclusive negotiations, the Special Committee and the Ness Board grew frustrated and

resolved to let the exclusivity agreement expire on May 20, 2011.  (Prelim. Proxy at 29-30)

**D.    Bidder D Fails To Finalize An Agreement And CVCI Makes A New Inquiry That
       Blows Out The Competition.**

On March 31, 2011, CVCI conveyed to the Special Committee an unsolicited

indication that CVCI would be interested in exploring a possible transaction in which affiliated

funds of CVCI would pay $7.75 per share to acquire all of Ness outstanding equity securities that

CVCI's affiliated funds did not own (the "March 31 Inquiry").  However, because Ness was in an

exclusivity arrangement with Bidder D, Ness informed CVCI on April 1, 2011 that its inquiry

had been received but that Ness was precluded from engaging in discussions with CVCI at that

time.

After the exclusivity agreement with Bidder D expired on May 20, 2011, the

Special Committee directed Jefferies to contact other potential bidders, including CVCI.  At this

time, Bidder D also lowered its previous bid to $7.00 per share.  Although Bidder D later

submitted a slightly higher proposal at $7.10 per share, it would not move from that number.  In

contrast, during this time, CVCI confirmed that it would be interested in exploring a possible transaction at $7.75 per share as stated in its March 31 Inquiry.  (Prelim. Proxy at 31)  On May 25, 2011 Ness entered into a confidentiality agreement with CVCI and gave CVCI access to Ness's electronic data room to conduct their diligence review.  (Prelim. Proxy at 31)

On June 10, 2011, after extensive discussions, Ness and CVCI announced that they had agreed to the definitive Merger Agreement in which CVCI agreed to acquire all of Ness's outstanding shares (other than shares then owned by CVCI or its affiliates) for $7.75 per share.  (Compl. ¶ 2)  The Proposed Transaction represents a total value of approximately $307 million for the Ness stockholders.  (Compl. ¶ 1)

**E.     Nature And State Of The Litigation Proceedings.**

In addition to this action, eight stockholders have each filed a purported class action complaint in the Delaware Court of Chancery (the "Delaware Actions").[5]  All nine suits contain similar baseless allegations.[6]  The plaintiffs in the Delaware Actions (the "Delaware Plaintiffs") make identical conclusory allegations that the Ness Board members breached their fiduciary duties by carrying out a process that did not ensure adequate and fair consideration to Ness's stockholders.  The Delaware Actions further allege that CVCI aided and abetted the alleged breaches of fiduciary duty.  On July 11, 2011, the Delaware Actions were consolidated

---

[5]   These cases are captioned:  *Israni v. Ness Technologies, Inc., et al.*, C.A. No. 6569-VCN (June 15, 2011); *Simon v. Ness Technologies, Inc., et al.*, C.A. No. 6578-VCN (June 17, 2011); *Astor BK Realty Trust v. Gerlitz, et al.*, C.A. No. 6580-VCN (June 17, 2011); *Scuta v. Ness Technologies, Inc., et al.*, C.A. No. 6582-VCN (June 17, 2011);  *Ferris v. Ness Technologies, Inc., et al.*, C.A. No. 6598-VCN (June 22, 2011); *Excellence Nessuah Gemel & Pension, Ltd., et al. v. Ness Technologies, Inc., et al.*, C.A. No. 6600-VCN (June 22, 2011); *Fogleman v. Ness Technologies, Inc., et al.*, C.A. No. 6607-VCN (June 23, 2011); and *Wachsler v. Ness Technologies, Inc., et al.*, C.A. No. 6609-VCN (June 24, 2011).

[6]   In violation of Local Rule 11.2, Plaintiff failed to notify the Court of the Delaware Actions.

and a leadership structure was established.[7]  On July 14, 2011 the Delaware Plaintiffs issued

their first discovery request to the Ness Defendants (the "Request for Production," *see*

Certification of Andrew Muscato, Exhibit B).  The Delaware Plaintiffs have requested sixty

categories of documents, all of which directly pertain to the claims made in this federal action.

On July 18, 2011, the Delaware Plaintiffs filed an amended complaint reasserting their

allegations that the Ness Board members breached their fiduciary duties and that CVCI aided and

abetted those breaches.  However, the Delaware Plaintiffs also include claims for breach of the

duty of disclosure based on the Preliminary Proxy.  In addition, the Delaware Plaintiffs have

moved for expedited discovery and a preliminary injunction.

## ARGUMENT[8]

### I.      UNDER THE PSLRA, PLAINTIFF IS NOT ENTITLED TO ANY DISCOVERY – LET ALONE EXPEDITED DISCOVERY.

Congress enacted the PSLRA in 1995 to curb abuses in securities litigation.  It

was designed "to prevent the filing of 'strike suits' – abusive class actions which are brought with

the hope that the expense of litigation may force defendants to settle despite the actions' lack of

merit."  *In re Lord Abbett Mutual Funds Litig.*, 533 F.3d 248, 250 (3d Cir. 2009).  A critical part

of this reform legislation was a provision mandating that "[i]n any private action arising under

this chapter, all discovery and other proceedings shall be stayed during the pendency of any

motion to dismiss, unless the court finds upon the motion of any party that particularized

discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15

---

[7]   The consolidated case is captioned:  *In re Ness Technologies, Inc. Shareholders Litigation*, C.A. No. 6569-VCN.

[8]   This Court should reject Plaintiff's Letter outright because it does not comply with the requirements of Local Rules 7.1 and 7.2 governing motion practice.

U.S.C. § 78u-4(b)(3)(B).  Congress enacted the automatic stay provision "to protect innocent defendants from having to pay nuisance settlements in securities fraud actions" and "'to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citation omitted).

While on a teleconference with this Court on July 19, 2011, Mr. Cecchi stated that he thought the PSLRA did not apply to this case because the Exchange Act claims are styled as individual claims.  He is wrong.[9]  The automatic stay provision applies even when federal securities claims are brought individually.[10]  *See Benbow v. Aspen Tech., Inc.*, C.A. No. 02-2881, 2003 WL 1873910, at *3 (E.D. La. Apr. 11, 2003) (denying motion to compel discovery, holding that PSLRA's automatic stay applied to claims brought individually); *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, C.A. No. C-06-03894 RMW, 2007 WL 1545194, at *2 (N.D. Cal. May 29, 2007) (rejecting argument that PSLRA automatic stay applies solely to class actions).  Should Plaintiff attempt to rely on *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162 (S.D.N.Y. 2001), to argue otherwise, he is also mistaken.  In *Tobias*, the court admitted that "the discovery stay provisions are not limited to federal securities *class* actions" and that the statute states that the PSLRA applied to "'any private action ….'"  *Id.* at 165 & 166 n.4 (citation omitted).

---

[9]   Plaintiff fails to explain how he, individually, will be irreparably harmed by the Ness Defendants' purported violations of the Exchange Act.  Because Plaintiff has already concluded that the merger consideration is "inferior" and "inadequate," one assumes he will vote against it.

[10]   The Plaintiff purports to bring his disclosure claims under the Exchange Act "individually," while asserting his state law claims for breach of fiduciary duty as a putative class action. (*See* Compl. ¶ 33)  By pleading his Exchange Act claim as an individual claim, Plaintiff seeks to avoid the class action requirements of the PSLRA, including, among other things, certification of the Complaint (15 U.S.C. § 78u-4(a)(2)), early notice to class members (15 U.S.C. § 78u-4(a)(3)(A)), restrictions on attorneys' fees (15 U.S.C. § 78u-4(a)(6)), and disclosure and publication requirements for class action settlements (15 U.S.C. § 78u-4(a)(7)).

Plus, the holding in *Tobias* – which denied defendants' motion to stay concurrent state court discovery – has been distinguished and rendered an outlier by numerous other courts. *See, e.g.*, *In re Cardinal Health, Inc.*, 365 F. Supp. 2d 866, 875-76 (S.D. Ohio 2005) (distinguishing *Tobias* and staying state court discovery); *Sarantakis v. Gruttadauria*, No. 02 C. 1609, 2001 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) (same).

Importantly, the protection of the automatic stay applies before a defendant files a motion to dismiss. The automatic stay operates in any action subject to the stay "when it is anticipated that [a motion to dismiss] will be filed in the future." *In re DPL Inc., Sec. Litig.*, 247 F. Supp. 2d 946, 947 n.4 (S.D. Ohio 2003) (citation omitted). *See also In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 681-83 (D. Md. 2000). Thus, discovery in this action is automatically stayed because Plaintiff has asserted federal securities fraud claims under Sections 14(a) and 20(a) of the Exchange Act, and the Ness Defendants have informed Plaintiff that they will move to dismiss those claims.

While the PSLRA does contemplate an exception to the automatic stay where a plaintiff can show undue prejudice, Plaintiff is unable to do so here. Specifically, federal courts have held that the mere delay resulting from an automatic stay of discovery does not constitute undue prejudice. Rather, this type of delay is specifically permitted by the PSLRA as an inherent consequence of the automatic stay provision. *See In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002) (rejecting plaintiffs' argument that they were unduly prejudiced because "delay is an inherent part of every stay of discovery required by the PSLRA").

Although Plaintiff tacitly acknowledges in his Letter that the PSLRA stay applies to his case, he fails to even mention the PSLRA in his brief. In his Letter, he asserts that "the purpose and intent of this stay is: '(1) to minimize the incentives for plaintiffs to file frivolous

securities class actions in the hope either that the corporate defendants will settle those actions rather than bear the high costs of discovery; (2) or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint.'"  (Letter at 5 n.1)  However, his Letter argument relies on a false premise:  he asserts, contrary to the case law, the PSLRA should not apply here because "Courts have lifted the discovery stay where these concerns do not exist."[11] (Letter at 5 n.1)  That is not the standard.  The statute is clear that Plaintiff must show undue prejudice to lift the stay – which he cannot do.  First, as will be shown in the Motion to Dismiss, Plaintiff's claims are meritless, and border on the frivolous.  Second, the high costs and burdens of expedited discovery in a case of this magnitude could coerce a settlement.  Indeed, Plaintiff admits he is "fishing" for a claim through discovery.  Plaintiff acknowledges that he "may not

---

[11]   The cases cited by Plaintiff in footnote one of the Letter do not support his assertion.  In *Tobias Holdings*, 177 F. Supp. 2d at 167, the court permitted limited discovery as to state law claims because the state law claims were wholly distinct from the federal securities claims.  Thus, the court held that denying discovery as to the state law claims would not promote the purpose of the PSLRA.  Here, the state law claims arise from the same set of facts as the federal securities claims and the court has supplemental jurisdiction.  (Compl. ¶ 9 "This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)")  Importantly, the Eastern District of Pennsylvania applied this very distinction in *Winer Family Trust v. Queen* and denied a motion to lift the PSLRA stay of state law claims because "the lone basis for jurisdiction [over state law claims] identified in Plaintiff's Amended Complaint is supplemental jurisdiction."  No. 03-4318, 2004 WL 350181, at *2 (E.D. Pa. Feb. 6, 2004) (refusing to lift PSLRA stay for state law claims and distinguishing *Tobias Holdings*). Furthermore, *In re Worldcom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002), and *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL 02-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003), are distinguishable.  In both cases, the courts permitted limited discovery under "exceptional circumstances" because the plaintiffs would be unfairly disadvantaged if they were denied discovery that had already been produced to plaintiffs in other related litigations.  The defendants in this case have not provided discovery to anyone regarding the Merger, and Plaintiff cannot establish that he would be disadvantaged.  Lastly, Plaintiff's reliance on *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D. Md. 2004), is misplaced.  There, the court permitted limited discovery because there was a reasonable concern that documents might be lost during the defendant company's pending reorganization.  Here, there is no such concern because Ness has implemented a litigation hold on all potentially relevant documents and e-mails.

have the record required" "with supporting evidence" gained through discovery and that he needs discovery to "properly support[]" his preliminary injunction application.  (Letter at 3, 5 n.1; Op. Br. at 2)  The only undue prejudice here will be that imposed on Defendants if the stay is not maintained.

Plaintiff also attempts to argue that the undue prejudice exception of the PSLRA applies, stating expedited discovery is necessary to "enable Plaintiff to seek a preliminary injunction in advance of the shareholder vote."  (Letter at 5 n.1)  The anticipated closing of the Proposed Transaction is not, however, grounds to lift the automatic stay provision of the PSLRA. For instance, in *Leone v. King Pharmaceuticals, Inc.*, a stockholder plaintiff sought expedited discovery in an action to enjoin a tender offer.  No. 2:10-CV-230, 2010 WL 4736271, at *2 (E.D. Tenn. Nov. 16, 2010).  Plaintiff argued that he would be unduly prejudiced by the PSLRA's automatic stay of discovery because he would be irreparably harmed if the tender offer were allowed to proceed.  *Id.* at *3.  The court rejected this argument, holding that plaintiff's request for discovery was "nothing more than a fishing expedition."  *Id.*  Likewise, by Plaintiff's own admissions in the Letter and the brief, any attempt by him to obtain discovery would likewise be "nothing more than a fishing expedition."  *Id.*  Moreover, Plaintiff has not established that the stay of discovery would be unduly prejudicial to his ability to press his preliminary injunction motion, nor could he.  *See Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp 717, 722 (S.D. Cal. 1996) (holding that there was no undue prejudice simply because delay might prevent plaintiff from obtaining an injunction to stop a stockholder vote that would decide a contest for corporate control).  *See also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. MDL 05-1708DWFAJB, Civ. 06-363DWFAJB, 2006 WL 763212, at *6-7 (D. Minn. Mar.

24, 2006) (denying motion to expedite discovery sought to build record for preliminary injunction).

        Furthermore, there can be no undue prejudice here because Plaintiff has a post-closing remedy.  *See Fisher v. Kanas*, 06-CV-1187(ADS)(ETB), 2006 WL 2239038, at *3 (E.D.N.Y. Aug. 4, 2006) (denying motion to partially lift automatic stay, finding there was no undue prejudice because plaintiff could still recover money damages).  *See also Leone*, 2010 WL 4736271, at *5 ("[B]ecause there is no rival offer on the table, there does not appear to be any basis for a conclusion that monetary damages would not be sufficient to compensate shareholders if the plaintiff's allegations are ultimately proven to be true.").  Under Delaware law and the Merger Agreement, stockholders who dissent from the merger transaction are entitled to appraisal rights following the closing of the merger.  *See* 8 *Del. C.* § 262; Prelim. Proxy at 8.  In addition, some Circuits have held that the Exchange Act provides a post-closing remedy if a court determines that a deficient proxy statement influenced stockholders to forego their appraisal rights.  *See Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 931-32 (2d Cir. 1992) (recognizing that Section 14(a) contemplates a post-closing federal claim for loss of state appraisal rights as a result of a deficient proxy).  *See also Howing Co. v. Nationwide Corp.*, 972 F.2d 700, 710 (6th Cir. 1992) (holding that plaintiffs established a Section 13(e) claim post-closing "based upon the loss of their appraisal remedy" where defendants filed a misleading proxy in connection with a going-private transaction).  Thus, the availability of a post-closing remedy – either in the form of appraisal rights or a post-closing cause of action under Section 14(a) – negates any prejudice that would result from a stay of discovery.

        Therefore, because the automatic stay of the PSLRA applies to Plaintiff's claims and there is no undue prejudice here, this Court should refuse to lift the automatic stay until it

has ruled on the forthcoming Motion to Dismiss.  The dispositive question is not – as Plaintiff

frames it – whether normal Rule 26 discovery procedures should be accelerated; the sole issue is

whether Plaintiff has met his burden to demonstrate that the automatic stay should be dissolved.

He has not.

## II.    PLAINTIFF FAILS TO JUSTIFY EXPEDITION UNDER ANY STANDARD.

Under any standard, "expedited discovery is not the norm."  *Leone*, 2010 WL

4736271, at *2 (citation omitted).  Under the PSLRA, Plaintiff is presumptively not entitled to

expedited discovery.  And under Federal Rule of Civil Procedure 26(d)(1), "[a] party may not

seek discovery from any source before the parties have conferred as required by Rule 26(f)."

*Better Packages, Inc. v. Zheng*, No. Civ. A. 05-4477 (SRC), 2006 WL 1373055, at *2 (D.N.J.

May 17, 2006).  While there is no controlling authority on the standard for expedited discovery

in the Third Circuit, unpublished decisions from this Court and other district courts in the Third

Circuit have applied both a stricter *Notaro* standard[12] and a "good cause"[13] standard when

---

[12]   The *Notaro* standard requires courts to apply four factors to determine the propriety of
expedited discovery. These factors consider "(1) irreparable injury, (2) some probability of
success on the merits, (3) some connection between the expedited discovery and the
avoidance of the irreparable injury and (4) some evidence that the injury that will result
without expedited discovery looms greater than the injury that the defendant will suffer if the
expedited relief is granted."  *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).  As is
discussed below and will be discussed more fully in the Motion to Dismiss, Plaintiff does not
satisfy this standard.  First, Plaintiff faces no irreparable injury because his claim mainly
concerns price, which can be remedied by appraisal rights provided in the Merger Agreement.
Second, Plaintiff will not succeed on the merits because the extensive sales process lasted
over eleven months and resulted in a purchase price that was a 68% premium over the
unaffected market price of Ness stock and he has not pleaded a viable disclosure claim.
Third, because there is no irreparable harm, there is zero connection to expedited discovery.
Fourth, Plaintiff offers no evidence that his alleged injury is greater than the enormous
burden that expedited discovery will place on this Court and the Defendants.  In fact, as
previously stated, Plaintiff's claim boils down to price and can be remedied after the
transaction closes.   The *Notaro* standard should apply here because the litigation is in its
infant stages.  Indeed, Independent Directors have not been served yet and there is no

*(cont'd)*

15

considering a motion for expedited discovery. *See Gucci Am., Inc. v. Daffy's Inc.*, No. Civ. A. 00-4463, 2000 WL 1720738, at *9-10 (D.N.J. Nov. 14, 2000) (applying *Notaro* standard and denying plaintiff's motion for expedited discovery because it was disputed whether irreparable injury would result in the absence of discovery, but the defendant would face harm if expedition was granted); *Better Packages*, 2006 WL 1373055, at *4-5 (applying good cause standard to deny plaintiff's motion for expedited discovery because the discovery requests were overly broad and there was no preliminary injunction hearing pending). While the more stringent *Notaro* standard should govern this case, Plaintiff cannot even meet the less stringent good cause standard. *See Badger v. Stryden Corp.*, C.A. No. 09-3619, 2010 WL 392352, at *1 (E.D. Pa. Jan. 26, 2010) (denying plaintiff's motion for leave to take depositions because plaintiff did not show good cause as to why the defendant should be deposed at an early time); *Entm't Tech. Corp.*, 2003 WL 22519440, at *4-5 (denying plaintiff's motion for expedited discovery under the good cause standard because no irreparable harm shown).

Good cause exists only when the "need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice" to the responding party. *Badger*, 2010 WL 392352, at *1 (denying expedited discovery because plaintiff failed to meet the good cause standard). *See also Entm't Tech. Corp.*, 2003 WL 22519440, at *3 (same); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (same). "Whether or not a

_____

*(cont'd from previous page)*

preliminary injunction hearing scheduled. *See id.* (reasoning that stringent standards are appropriate to protect defendants at early stages of litigation).

[13] District Courts in the Third Circuit also refer to it as a "reasonableness inquiry"; however, the reasonableness inquiry is functionally equivalent to the good cause standard. *See Entm't Tech. Corp. v. Walt Disney Imagineering*, No. Civ. A. 03-3456, 2003 WL 22519440, at *3 n.2 (E.D. Pa. Oct. 2, 2003) (explaining that the change in name is to avoid confusion with the Third Circuit's "good cause" standard used to decide motions for protective orders under Fed. R. Civ. P. 26(c)).

16

preliminary injunction hearing is pending" is "one factor to be evaluated among many, rather than an outcome determinative fact." *Entm't Tech. Corp.*, 2003 WL 22519440, at *7.  *See also Better Packages, Inc*, 2006 WL 1373055, at *5 (denying expedited discovery that was sought in anticipation of preliminary injunction hearing); *MRP, Inc. v. Moreman*, C.A. No. 3:10-CV-707, 2011 WL 61177, at *3 (W.D. Ky. Jan. 7, 2011) (denying expedited discovery where plaintiff prayed for preliminary injunction because plaintiff "[did] nothing to demonstrate good cause"); *5ifth Element Creative, LLC v. Kirsch*, C.A. No. 5:10-cv-255-KKC, 2010 WL 4102907, at *2 (E.D. Ky. Oct. 18, 2010) (denying expedited discovery in case where preliminary injunction was sought).

The party seeking expedited discovery must demonstrate a *prima facie* need. *Leone*, 2010 WL 4736271, at *2 (denying motion for expedited discovery in case challenging merger transaction); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000) ("Expedited discovery is not the norm.  Plaintiffs must make some *prima facie* showing of the *need* for the expedited discovery.") (emphasis in original).  Here, Plaintiff fails to make any showing of good cause for two reasons: he fails to show any irreparable harm and he fails to allege any material existing fact that was omitted from the Preliminary Proxy.

**A.**     **Plaintiff Fails To Show Any Irreparable Harm Because Money Damages Are Sufficient To Remedy Any Alleged Harm.**

If a plaintiff cannot show a threat of irreparable harm – such as when money damages are sufficient – then there is no "good cause." *Leone*, 2010 WL 4736271, at *4-5.  The facts here are almost identical to those in *Leone*.  In that case, plaintiff challenged a merger between Pfizer, Inc. ("Buyer") and King Pharmaceuticals, Inc. ("Seller").  *Id.* at *1.  Plaintiff brought a class action suit against Buyer, Seller and Seller's directors alleging, among other things, fiduciary duty claims against Seller's directors and aiding and abetting claims against

both Buyer and Seller.  *Id.*  The complaint alleged that the proposed merger was at an unfair

price, that the merger agreement contained "preclusive deal protections," that Seller's Schedule

14D-9 contained material omissions, and that Seller violated Section 14 of the Exchange Act.  *Id.*

The court analogized the "good cause" standard used in district courts to the standard for

expedited proceedings used in the Court of Chancery of Delaware – which requires plaintiffs to

show a "colorable claim" and "a sufficient possibility of threatened irreparable injury."  *Id.* at *2,

*4 (citing *In re 3Com S'holders Litig.*, C.A. No. 5067-CC, 2009 WL 5173804, at *1 (Del. Ch.

Dec. 18, 2009)) (internal quotation omitted).  Without reaching the colorable claim prong, the

court denied expedited discovery because plaintiff had failed to establish a sufficient possibility

of threatened irreparable harm – that is, plaintiff had failed to show that the stockholders would

not be fully informed when voting on the merger; thus, money damages were sufficient to

remedy any alleged wrongdoing.  *Id.* at *4-5.  *See also Qwest Commc'ns Int'l Inc. v. WorldQuest*

*Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (denying expedited discovery under the

good cause standard where discovery was sought for a preliminary injunction argument because

plaintiff had failed to show any threat of irreparable harm); *Special Situations Cayman Fund, L.P.*

*v. Dot Com Entm't Grp., Inc.*, No. 03-CV-0811E(F), 2003 WL 23350128, at *1 (W.D.N.Y. Dec.

5, 2003) (same).

    Here, the basis of Plaintiff's claim is that the Merger price "unfairly deprive[s]

Plaintiff and other members of the class of the true value of their investment in Ness."  (Compl. ¶

89)  However, nowhere does Plaintiff adequately explain why his claims could not be remedied

by his statutory appraisal rights or money damages if his claim is successful.  Moreover, as will

be explained more fully in the Motion to Dismiss, nowhere does Plaintiff allege any viable

process claims.  Indeed, Plaintiff seeks to vitiate a transaction stemming from an eleven-month

process in which *twenty-seven* additional potential acquirers were contacted, five bidders emerged, the independent Special Committee obtained a 41% increase to the initial offer price and the Proposed Transaction was approved by an indisputably disinterested and independent Ness Board.  In short, because Plaintiff has not shown any possibility of a colorable claim or irreparable injury, he cannot show good cause and his application for expedited discovery should be denied.

**B.      Plaintiff Fails To Allege Any Material Omitted Fact In The Preliminary Proxy.**

As will be explained more fully in the Motion to Dismiss, Plaintiff does not allege that a single sentence in the Preliminary Proxy was false or misleading.  Rather, he claims that the Preliminary Proxy failed to disclose ostensible, unspecific "details" about the Special Committee's process and undefined "inputs" into the analysis conducted by Ness's financial advisers.  (Compl. ¶¶ 7, 69)  But, Plaintiff fails to allege that any material fact that was required to be disclosed was omitted from the Preliminary Proxy.  To prove materiality, a plaintiff must demonstrate that "the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  *See also Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000).  Moreover, to succeed on his disclosure claims, Plaintiff must establish "'that facts are missing from the [disclosure] statement, identify those facts, state why they meet the materiality standard and how the omission caused injury.'"  *Wayne Cnty. Emps.' Ret. Sys. v. Corti*, 954 A.2d 319, 330 n.23 (Del. Ch. 2008) (quoting *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173 (Del. 2000));[14] *Minzer v. Keegan*, 218 F.3d 144, 149 (2d Cir. 2000) (dismissing 14(a)

---

[14]   Delaware follows the materiality standard of *TSC Industries*.  *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985).

claims because plaintiff failed to show that omitted information was material).  It is not merely enough to pose a question, the answer to which may or may not be material.  *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 736 (Del. Ch. 1999), *aff'd mem. sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).  Furthermore, the Ness Board is not required to disclose every component of the financial analysis undertaken by Jefferies or BoA Merrill Lynch, or all the data underlying that analysis.  *See In re Gen. Motors (Hughes) S'holder Litig.*, C.A. No. 20269, 2005 WL 1089021, at *16 (Del. Ch. May 4, 2005) (rejecting the argument that raw data underlying summaries of fairness opinions must be disclosed, noting that "[t]he fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis"), *aff'd*, 897 A.2d 162 (Del. 2006).

Here, Plaintiff's disclosure claims rest upon two primary themes:  why the Ness Board did or did not do something and the immaterial details underlying Jefferies' and BoA Merrill Lynch's analyses.  (Compl. ¶¶ 64-69; Op. Br. at 8-9)  As will be explained more fully in the forthcoming Motion to Dismiss, these mere questions and quibbles do not suffice to allege a material omitted fact and are not valid disclosure claims.  But even if they were, the Preliminary Proxy resolves Plaintiff's questions.  (Prelim. Proxy at 20-33, 37-46)

Plaintiff also claims that the Preliminary Proxy is materially misleading because "it fails to disclose Ness' unlevered free cash flows or even the key inputs necessary to reach free cash flows."  (Compl. ¶ 69; Op. Br. at 10)  But free cash flows are not *per se* material, and Plaintiff alleges no facts that would cause them to be material here.  *See Steamfitters Local Union 447 ex rel. inVentive Health, Inc. v. Walter*, C.A. No. 5492-CC, at 8-9 (Del. Ch. June 21, 2010) (denying motion to expedite because free cash flow projections were not material) (TRANSCRIPT), attached to the Certification of Andrew Muscato as Exhibit C; *In re 3Com*,

2009 WL 5173804, at *2-3 (denying expedition where bankers' discounted cash flow analysis was not accompanied by free cash flow projections because the plaintiffs "failed to assert a colorable claim as to why management should be required to provide full versions of the projections underlying the already disclosed summaries").  The law is clear that directors are not required to bombard stockholders with all of the information that would be necessary for them to perform their own independent valuation analyses.  Thus, "[a] disclosure that does not include all financial data needed to make an independent determination of fair value is not *per se* misleading or omitted a material fact.  The fact that financial advisors may have considered certain non-disclosed information does not alter this analysis."  *In re Checkfree Corp. S'holders Litig.*, C.A. No. 3193-CC, 2007 WL 3262188, at *2 (Del. Ch. Nov. 1, 2007).

Plaintiff cites *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010), for the proposition that "free cash flow" estimates are "clearly material."  (Op. Br. at 14)  But *Maric* does *not* hold that free cash flow estimates must be disclosed; the court in *Maric* merely held that in a case where management prepared free cash flow estimates and then excised them from the projections disclosed to stockholders, it should put them back in.  Likewise, Plaintiff cites to *In re Netsmart Technologies, Inc. Shareholders Litigation*, 924 A.2d 171 (Del. Ch. 2007), for the proposition that disclosures are materially incomplete if cash flow projections are not disclosed.  (Op. Br. at 13)  However, the court in *Netsmart* required disclosure of the free cash flow projections because management had provided its financial advisor with an updated set of projections, but only disclosed an older set in the proxy.  *Netsmart*, 924 A.2d at 202-03.  Here, Plaintiff cannot allege that management even prepared free cash flow estimates – let alone updated estimates – or that they erased them from the projections they gave to Jefferies or BoA Merrill Lynch.  *Id.  See also Stroud v. Grace*, 606

A.2d 75, 84 (Del. 1992) (stating that directors have a duty to disclose only "material information *within the board's control*" and not information that does not exist) (emphasis added).  In the absence of a colorable disclosure claim, neither discovery nor expedited discovery should be granted.

Indeed, in support of his request for discovery on his disclosure claims, Plaintiff's brief cites exclusively to Delaware law.  But, he points to no Delaware case that actually *granted* expedited discovery, and the law is decidedly to the contrary.  In Delaware, the Court of Chancery has recently – and consistently – refused to allow expedited discovery on claims challenging a merger on the grounds that insufficient "details" about the sale process were not revealed or on the grounds that "inputs" into bankers' opinions were not disclosed.  *See, e.g.*, *In re 3Com*, 2009 WL 5173804, at *6 ("There are limitless opportunities for disagreement on the appropriate valuation methodologies to employ, as well as the appropriate inputs to deploy within those methodologies.").  *See also Globis Partners, L.P. v. Plumtree Software, Inc.*, C.A. No. 1577-VCP, 2007 WL 4292024, at *11, 13 (Del. Ch. Nov. 30, 2007) (rejecting claim that more should have been disclosed in fairness opinion description); *In re Best Lock Corp. S'holder Litig.*, 845 A.2d 1057, 1073 (Del. Ch. 2001) ("Delaware courts have held repeatedly that a board need not disclose specific details of the analysis underlying a financial advisor's opinion.").

## III.    PLAINTIFF'S BROAD DISCOVERY REQUESTS PRECLUDE EXPEDITION.

Even if Plaintiff had shown good cause for expedition – which he has not – courts will only grant expedition of discovery requests that are "narrowly tailored."  *Better Packages, Inc.*, 2006 WL 1373055, at *3 (denying expedited discovery because "[m]any of the requests to produce interrogatories and depositions are overly broad and extend well beyond those issues likely to arise in a preliminary injunction hearing").  *See also Bug Juice Brands, Inc. v. Great*

*Lakes Bottling Co.*, No. 1:10-cv-229, 2010 WL 1418032, at *2 (W.D. Mich. Apr. 6, 2010); *MRP, Inc.*, 2011 WL 61177, at *2 (stating that "expedited discovery requests must be 'appropriately narrow and targeted'") (citation omitted); *Advent Sys. Ltd. v. Unisys Corp.*, C.A. No. 88-3100, 1988 WL 46258, at *1 (E.D. Pa. May 10, 1988) (denying expedited discovery because the motion is "frivolous, given the all-encompassing nature of the discovery sought").[15]  Indeed, "motions for expedited discovery are typically denied when the movant's discovery requests are overly broad."  *Share Corp. v. Momar, Inc.*, No. 10-CV-109, 2010 WL 724321, at *2 & n.3 (E.D. Wis. Feb. 26, 2010) (denying expedited discovery because plaintiff's "purely speculative" claims did not justify the undue burden its broad discovery requests would impose on the defendant).

        In contrast, Plaintiff seeks four depositions and the production of an untold number of documents that are not framed by a motion for a preliminary injunction.  For instance, he seeks production of:

- "minutes from any meetings attended by any member of Ness' Board of Directors at which the Proposed Transaction or any other potential strategic transactions were discussed"  (Letter at 3);

- "***all*** communications or documents concerning the financial advisors retained in connection with the Proposed Transaction … [including] retainer agreements, fairness opinions, bankers' books and any drafts thereof, presentation documents, and documents or information sufficient to identify the assumptions and calculations that formed the bases for the financial advisors' analyses" (Letter at 3-4) (emphasis added);

---

[15]   The scope of discovery "is also relevant to whether or not good cause exists."  *Caston v. Hoaglin*, C.A. No. 2:08-cv-200, 2009 WL 1687927, at *2 (S.D. Ohio June 12, 2009).

- "***all*** communications between Ness, CVCI and their financial advisors related to the Proposed Transaction" (Letter at 4) (emphasis added);

- "***all*** presentation documents prepared by Ness' management or any bankers or financial advisors … concerning the Proposed Transaction or any other potential strategic transaction, merger, or acquisition" (Letter at 4) (emphasis added);

- documents related to "any benefits to be received by any officer, director, or member of management of Ness in connection with the Proposed Transaction"  (Letter at 4); and

- "***all*** financial projections prepared by Ness' management during the past 12 months" and "any valuations prepared assessing the value of Ness as an enterprise, or Ness' stock, in the past 12 months."  (Letter at 4) (emphasis added)

Thus, Plaintiff's exceedingly broad discovery requests likewise favor denying his request for expedited discovery.  Indeed, only yesterday, the District of Massachusetts denied Plaintiff's counsel expedited discovery in a separate case because it was "wildly overbroad."  *Crane v. Varian Semiconductor Equip. Assocs., et al.*, C.A. No. 11-11236-RJS (D. Mass. July 18, 2011). In *Varian*, the substantive allegations of the complaint duplicated *precisely* the disclosure allegations advanced here, Plaintiff's counsel made *verbatim* identical claims that a merger target failed to disclose "free cash flow" and "inputs" into the bankers' analyses, and Plaintiff's counsel sought identical discovery.  The Massachusetts District Court saw through Plaintiff's counsel's claims as a gambit to compel discovery that was not at all tailored to the asserted claims and refused discovery altogether.  Just so here.

24

## IV.   THE EQUITIES FAVOR DEFENDANTS.

As described above, Plaintiff has failed to state a colorable process or disclosure claim, or show any irreparable injury under the "good cause" standard.  Indeed, under the PSLRA's automatic stay, Plaintiff is not entitled to any discovery – let alone expedited discovery.  Nonetheless, Plaintiff claims that he is entitled to expedited discovery and that an injunction "would be no hardship to Defendants."  (Op. Br. at 18)  Such an assertion is obviously false.  The Defendants and the executives of Ness and CVCI will face the substantial costs and lost time involved in conducting expedited discovery at a time when Ness and CVCI are attempting to provide a value-maximizing transaction for Ness stockholders and to facilitate the Merger.  In addition, the Merger is the most valuable proposal produced after an extensive review of strategic alternatives, and granting the requested injunction means the Ness stockholders might risk losing this transaction.  *See McMillan v. Intercargo Corp.*, C.A. No. 16963, 1999 WL 288128, at *4 (Del. Ch. May 3, 1999).  Indeed, no other viable and superior alternatives have emerged.  When no higher bidder emerges after a deal is announced, that itself is "'evidence that the directors, in fact, obtained the highest and best transaction reasonably available.'"  *In re Pennaco Energy, Inc. S'holders Litig.*, 787 A.2d 691, 707 (Del. Ch. 2001) (citation omitted).  As former Chancellor Allen observed under similar circumstances:

> [T]he balance of harm in this situation in which there is no alternative transaction
> and issuance of the injunction inescapably involves a risk that the shareholders
> will lose the opportunity … ***requires not only a special conviction about the
> strength of the legal claim asserted, but also a strong sense that the risks in
> granting the preliminary relief of an untoward financial result from the
> stockholders' point of view is small***.  Repeatedly the plaintiffs' class action bar
> exhorts the court to bravely risk the consequences in circumstances such as these,
> asserting that more money to the shareholders, not less, will probably result.  At
> least on facts such as these, a due respect for the interests of the class on whose
> behalf these exhortations are made, requires, in my judgment, that this invitation
> be declined.

*Solash v. Telex Corp.*, C.A. Nos. 9518, 9528 & 9525, 1988 WL 3587, at *13 (Del. Ch. Jan. 19, 1988) (emphasis added).  *See also In re Cheyenne Software, Inc.*, C.A. No. 14941, 1996 WL 652765, at *5 (Del. Ch. Nov. 7, 1996) (denying injunction where offer at issue was the only offer now available to stockholders, and where the company would incur substantial costs if the closing date were delayed, and had no assurance that acquirer would extend offer if it were delayed).  Here, Plaintiff has failed to allege the presence of any superior alternatives and has wholly ignored the considerable risks that enjoining the Merger would entail.  Thus, the balance of the equities favors denying Plaintiff's request for expedited discovery.

# CONCLUSION

For the foregoing reasons, the Ness Defendants respectfully request that the

PSLRA Automatic Stay be enforced and that Plaintiff's motion to expedite discovery be denied.

*/s/ Andrew Muscato*
Robert J. Del Tufo
Andrew Muscato
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
(A Delaware Limited Liability Partnership)
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
Fax:  (212) 735-2000

**OF COUNSEL:**

| | |
|---|---|
| John D. Donovan, Jr. | Edward P. Welch |
| Brendon O. Carrington | Robert S. Saunders |
| ROPES & GRAY LLP | Ronald N. Brown, III |
| Prudential Tower | Arthur R. Bookout |
| 8000 Boylston Street | SKADDEN, ARPS, SLATE, |
| Boston, Massachusetts  02199-3600 |   MEAGHER & FLOM LLP |
| Tel.:  (617) 951-7566 | One Rodney Square |
| Fax:  (617) 235-0023 | P.O. Box 636 |
| | Wilmington, Delaware  19899-0636 |
| *Attorneys for Defendants Satyam C. Cherukuri,* | Tel.: (302) 651-3000 |
| *P. Howard Edelstein and Morris Wolfson* | Fax: (302) 651-3001 |

*Attorneys for Defendants Ness Technologies,*
*Inc., Satyam C. Cherukuri, Issachar "Sachi"*
*Gerlitz, Morris Wolfson, Dan S. Suesskind, P.*
*Howard Edelstein and Gabriel Eichler*

DATED:  July 20, 2011