# EXHIBIT B

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| IN RE NESS TECHNOLOGIES, INC. SHAREHOLDERS LITIGATION | ) ) | CONSOLIDATED C.A. No. 6569-VCN |

**PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT NESS TECHNOLOGIES, INC. AND THE INDIVIDUAL DEFENDANTS**

Plaintiffs hereby request that defendants produce the documents hereinafter described for inspection and copying by plaintiffs' counsel within the time required by law or such other time as the Court may order, at the offices of Rigrodsky & Long, P.A., 919 North Market Street, Wilmington, DE 19801, or at such other place and time upon which counsel may agree.

**I.    DEFINITIONS**

1. "Ness" means Ness Technologies, Inc., and/or any or all of its predecessors, successors, parents, subsidiaries, divisions, affiliates, or anyone acting or purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

2. "Individual Defendants" means, collectively and individually, Satyam C. Cherukuri, Issachar Gerlitz, Morris Wolfson, Dan S. Suesskind, P. Howard Edelstein, Gabriel Eichler, Ajit Bhushan, and/or anyone acting or purporting to act on their behalf.

3. "CVCI" includes Citi Venture Capital International, Jersey Holding Corporation and Jersey Acquisition Corporation, and/or any or all of CVCI's predecessors, successors, parents, subsidiaries, divisions, affiliates, or anyone acting or purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

4. "Defendants" means Ness, CVCI and the Individual Defendants.

5. "Board" means the Board of Directors of Ness during the Relevant Time Period (defined below).

6. "Special Committee" means the "four independent and disinterested directors," as stated in the Preliminary Proxy, including Satyam C. Cherukuri, P. Howard Edelstein, Dan S. Suesskind and Morris Wolfson.

7. "Proposed Transaction" means the proposed sale of Ness to CVCI, pursuant to which Ness common stockholders will receive $7.75 in cash for each outstanding share of common stock they own.

8. "Merger Agreement" means agreement and plan of merger dated as of June 10, 2011, among, Ness and CVCI, filed with the Securities and Exchange Commission ("SEC") on June 10, 2011, as an exhibit to a Form 8-K.

9. "Jefferies" means Jefferies & Company, Inc. and/or any or all of its predecessors, successors, parents, subsidiaries, divisions, affiliates, or anyone acting or purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

10. "BofA" means Merrill Lynch, Pierce, Fenner & Smith Incorporated and/or any or all of its predecessors, successors, parents, subsidiaries, divisions, affiliates, or anyone acting or purporting to act on its behalf, including any of its respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

11. "Preliminary Proxy" means the Preliminary Proxy Statement filed by Ness on Form PREM14A with the SEC on June 30, 2011.

12. The term "Offer" means any proposal or expression of interest regarding:

(a) any merger, consolidation, share exchange, business combination or other similar transaction or series of related transactions involving Ness or any significant subsidiary of Ness;

(b) any sale, lease, exchange, transfer, or other disposition of the assets of Ness or any of its subsidiaries constituting 5% or more of the consolidated revenues of Ness or accounting for 5% or more of the consolidated revenues of Ness in any one transaction or in a series of related transactions;

(c) any offer to purchase, tender offer, exchange offer or any similar transaction or series of related transactions made by any person involving 5% or more of the outstanding shares of any class of capital stock of Ness; and

(d) any recapitalization, restructuring, leveraged buyout, or stock buyback involving Ness.

13. The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail, telegram, overnight delivery, telephone, facsimile or telex.

14. The term "documents" means documents, whether fixed in tangible medium or electronically stored on disk or tape. The word "documents" shall include, by way of example and not by way of limitation, all of the following: papers, correspondence, trade letters, envelopes, memoranda, telegrams, cables, notes, messages, reports, studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, questionnaires, surveys, charts,

3

newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices, diagrams, instructions, diaries, minutes of meetings, corporate minutes, orders, resolutions, agendas, memorials, notes or oral communications, whether by telephone or face-to-face, contracts, agreements, drafts of or proposed contracts or agreements, memoranda of understanding, letters of intent, deal memoranda, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible things on which any handwriting, typing, printing, photo-static, electronic or other form of communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions or drafts thereof, whether used or not.

15. "You" and "Your" refer to the person or entity responding to these document requests.

16. The following rules of construction shall apply to all discovery requests:

(a) All/Each. The terms "all" and "each" shall be construed as "all and each";

(b) And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c) The use of the singular form of any word includes the plural and vice versa;

(d) The masculine includes the feminine and neuter genders; and

(e) The term "including" shall be construed as "including, but not limited to."

17. The term "person" means any individual, corporation, partnership, firm, association, government agency or other organization recognizable at law, and its agents and employees.

18. The term "concerning" means relating to, referring to, describing, evidencing, or constituting. Requests for documents "concerning" any subject matter include documents concerning communications regarding that subject matter.

## II. INSTRUCTIONS

1. You are requested to produce all documents described below that are in Your possession, custody, or control or in the possession, custody or control of Your predecessors, successors, parents, subsidiaries, divisions, or affiliates, directors, officers, managing agents, employees, attorneys, accountants or other representatives. The documents are to be produced in the form and in the same order within each file in which they were located prior to production. The file folders, boxes, binders, or other containers in which such documents are found are also requested to be produced intact, including the title, labels, or other description of each such folder, box, binder, or container.

2. Scanned documents should be provided as single page tiff images with an .opt image cross reference file and a delimited database load file. The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, contain correct document breaks; for instance, a five- page fax consisting of a cover page and a four-page memo

5

should be unitized as a five-page document). Multi-page OCR text for each document should also be provided.

3. Electronically stored information ("ESI") will be produced as single-page tiff images with the exception of Microsoft Excel Spreadsheets, audio and database-type files, including, but not limited to, Microsoft Access – which shall be produced in native format. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph, the parties agree to meet and confer on the issue in good faith. Additionally, all ESI will be produced with a delimited, Unicode database load file that contains metadata fields. An .opt image cross reference file will also be provided for all tiff images.

4. Unless otherwise indicated the relevant time period for each request shall be January 2010, unless otherwise noted, through the date of Your response to this document request (the "Relevant Time Period").

5. Each Defendant shall produce the original of each document described below or, if the original is not in its custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

6. If production of a document is withheld pursuant to a claim of privilege, as to each such withheld document, at the time of production, state the following information:

    (a)  Which privilege is claimed;

    (b)  A precise statement of the facts upon which said claim of privilege is based; and

    (c)  The following information describing each purportedly privileged document:

      (i)  its nature, *e.g.*, agreement, letter, memorandum, etc.;

      (ii)  the date it was prepared;

      (iii)  the date it bears;

      (iv)  the date it was sent;

      (v)  the date it was received;

      (vi)  the identity of the person preparing it;

      (vii)  the identity of the person sending it;

      (viii)  the identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies;

      (ix)  a statement as to whom each identified person represented or purported to represent at all relevant times; and

      (x)  a precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

  7.  Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason(s) it is not being produced in full and describe to the best of Your knowledge, information and belief, and with as much

particularity as possible, those portions of the document which are not being produced.

8. If a document responsive to these requests was at any time in any Defendant's possession, custody or control but now is no longer available for production, as to each such document state the following information:

(a) whether the document is missing or lost;

(b) whether it has been destroyed;

(c) whether the document has been transferred or delivered to another person or entity and, if so, at whose request;

(d) whether the document has been otherwise disposed of; and

(e) a precise statement of the circumstances surrounding the disposition of the document and the date of the document's disposition.

## III. DOCUMENTS TO BE PRODUCED BY DEFENDANTS

1. All minutes of all meetings of the Board, whether formal or informal, and all notes of every such meeting taken by the Secretary of the Board or by any other person attending said meeting, during the Relevant Time Period, at which any of the following was discussed:

(a) the Proposed Transaction; or

(b) any other Offer.

2. All minutes of all meetings of the Special Committee, whether formal or informal, and all notes of every such meeting taken by the Secretary of the Special Committee or by any other person attending said meeting, during the Relevant Time Period, at which any of the following was discussed:

8

        (a)      the Proposed Transaction; or

        (b)      any other Offer.

3.      All documents concerning preliminary discussions between Ness and CVCI during 2007 and 2008, as described in the Preliminary Proxy, concerning the possibility of CVCI making an investment in the Company.

4.      All documents concerning CVCI and its affiliates' acquisition of 3,657,667 shares of Ness from Warburg Pincus Equity Partners and Dr. Henry Kressel on March 18, 2008.

5.      All documents concerning the appointment of Ajit Bhushan, a managing director of CVCI, to the Board on or about September 1, 2009, including any meetings among any Individual Defendant or management of the Company with CVCI during that time period.

6.      All documents prepared in anticipation of, disseminated and/or made available at any meeting referred to in Request Nos. 1 and 2, above.

All documents concerning any negotiations, discussions, meetings or communications between Ness and Bidders A through D (as defined in the Preliminary Proxy) regarding any Offer and/or the Proposed Transaction.

7.      All documents and communications concerning any agreements, ancillary or related to the Proposed Transaction, including documents sufficient to disclose any negotiations that took place with respect thereto.

8.      All documents concerning the selection of Satyam C. Cherukuri, P. Howard Edelstein, Dan S. Suesskind and Morris Wolfson to the Special Committee.

9. All documents concerning any negotiations, discussions, meetings or communications between or among Defendants concerning the Proposed Transaction and/or any Offer.

10. All documents concerning Ness's business results, financial performance, existing financial condition, and strategic plans, goals and prospects, including, without limitation, each and every financial budget prepared during the Relevant Time Period.

11. All documents and communications concerning or commenting upon the fairness or adequacy of the consideration offered to the Company's shareholders in the Proposed Transaction, whether from a financial point of view or otherwise.

12. All documents concerning any forecasts or projections prepared during the Relevant Time Period, including the Management Case (as defined in the Preliminary Proxy), including the information the forecasts or projections were based upon, how the forecasts or projections were prepared, who prepared them, and whether they were revised during the process leading to the Proposed Transaction.

13. All documents concerning any forecasts or projections prepared during the Relevant Time Period that included "certain sensitivities" (as used in the Preliminary Proxy), including the Sensitivity Case (as defined in the Preliminary Proxy), including the information the forecasts or projections were based upon, how the forecasts or projections were prepared, who prepared them, and whether they were revised during the process leading to the Proposed Transaction.

14. All documents concerning Mr. Suesskind's decision and/or announcement to resign on or about October 5, 2010.

15. Documents sufficient to demonstrate Aharon Fogel's affiliation with one of Bidder A's limited partners.

16. All documents concerning each and every communication between Ness and its Board on the one hand, and each and every securities analyst with whom they communicated during the Relevant Time Period, on the other.

17. All documents concerning, referring to or supporting each and every analyst report about Ness during the Relevant Time Period.

18. All documents concerning Ness's engagement or retention of any financial advisor, investment banker, and/or expert to assist with any strategic planning analyses, or to explore any strategic alternatives for Ness, including, without limitation, all documents concerning the terms of engagement or remuneration to be paid to such financial advisor, investment banker, and/or experts for its services and all conflicts of interest any such advisor disclosed to Ness.

19. All documents concerning the Special Committee's engagement or retention of any financial advisor, investment banker, and/or expert to assist with any strategic planning analyses, or to explore any strategic alternatives for Ness, including, without limitation, all documents concerning the terms of engagement or remuneration to be paid to such financial advisor, investment banker, and/or experts for its services and all conflicts of interest any such advisor disclosed to Ness.

20. All documents prepared by Jefferies in connection with the Proposed Transaction and/or any Offer, including any financial projections and analyses of Ness's

financial and operational results and all documents given to Jefferies, including by the Special Committee, that were used in preparing such projections and analyses.

21. All documents prepared by BofA in connection with the Proposed Transaction and/or any Offer, including any financial projections and analyses of Ness's financial and operational results and all documents given to BofA, including by the Board or the Company's management, that were used in preparing such projections and analyses.

22. Any documents concerning any and all matters in which Jefferies performed services for Ness in the three years preceding this Request, including the amount of fees paid to Jefferies in connection with those services.

23. Any documents concerning any and all matters in which BofA performed services for Ness in the three years preceding this Request, including the amount of fees paid to BofA in connection with those services.

24. Any documents concerning any and all matters in which Jefferies performed services for CVCI in the three years preceding this Request, including the amount of fees paid to Jefferies in connection with those services.

25. Any documents concerning any and all matters in which BofA performed services for CVCI in the three years preceding this Request, including the amount of fees paid to BofA in connection with those services.

26. All documents concerning any purported "leaks" of information pertaining to the process leading to the Proposed Transaction (*e.g.*, according to the Preliminary Proxy, "[o]n December 10, 2010, an Israeli newspaper published an article reporting that [Ness was] involved in acquisition discussions with four investment funds").

27. All documents and communications concerning any business, financial, contractual, social, legal, personal, or familial relationship between or among any of the Defendants.

28. All documents concerning any evaluation or review of any of the terms or conditions of the Proposed Transaction and/or any Offer and, without limitation, the consideration to be offered to Ness's shareholders.

29. All documents concerning, memorializing or supporting the due diligence files provided to CVCI by Ness, if any, including, without limitation, all documents deposited in any "data room" established to facilitate the due diligence process leading up to the Proposed Transaction, including, but not limited to, the confidential information memorandum provided to CVCI.

30. All documents received by Defendants or any of their officers, directors or representatives from any financial advisors, investment bankers, and/or experts retained by any of them, in connection with such advisors' evaluation or review of the Proposed Transaction and/or any Offer, including, but not limited to, financial information, analysis or presentations (preliminary and final).

31. All appraisals, analyses, reviews, opinions or other documents concerning the value, market value or fair value of Ness's stock or any of the assets or businesses of Ness made, received or reviewed by, or on behalf of, Ness, any committee, or the Individual Defendants, or their financial advisors and/or investment bankers.

32. All documents concerning the specific due diligence requested by and provided to CVCI, including, specifically, the list of items CVCI requested on or about April

7, 2011.

33. All documents concerning any plans, efforts, or attempts to sell, merge, consolidate, combine, sell assets, or otherwise transfer ownership or control of Ness – other than what is disclosed in the Preliminary Proxy – prior to the announcement of the Proposed Transaction.

34. All documents concerning any plan, effort or attempt to maximize shareholder value, including, but not limited to, placing Ness up for auction or exposing Ness's shares to some other market check mechanism.

Documents sufficient to demonstrate the nature of Mr. Wolfson's investment in Bidder D.

35. All documents concerning potential, contemplated, or proposed disposition of any assets, segments, divisions, or businesses of Ness after the consummation of the Proposed Transaction.

36. All documents concerning communications between any Defendants and any federal, state or local governmental agency concerning the Proposed Transaction and/or any Offer.

37. All documents authored, received or reviewed by the Board, any committee or sub-committee of the Board formed in connection with the Proposed Transaction and/or any Offer, or any member thereof, in connection with or concerning the Proposed Transaction and/or any Offer.

38. All documents concerning any communications between the Board, any committee or sub-committee of the Board formed in connection with the Proposed

14

Transaction and/or any Offer and any financial advisor, investment bankers or experts concerning the Proposed Transaction and/or any Offer.

39. All documents concerning any past, current, or future engagement of Jeffries by the Company or CVCI including documents sufficient to discern the terms of each such engagement and any anticipated or actual remuneration to be received in connection therewith.

40. All documents concerning any past, current, or future engagement of BofA by the Company or CVCI including documents sufficient to discern the terms of each such engagement and any anticipated or actual remuneration to be received in connection therewith.

41. All documents provided by Ness, the Board or any committee or sub-committee of the Board formed in connection with the Proposed Transaction and/or any Offer to CVCI, any financial advisor, investment bankers, or experts concerning the Proposed Transaction and/or any Offer, including, but not limited to, presentation materials provided by the Board or management of the Company, including, but not limited to, financial information, analyses or presentations (preliminary and final).

42. All documents concerning any presentations by any financial advisor, investment bankers, or experts to the Board, and/or any committee or sub-committee of the Board formed in connection with the Proposed Transaction and/or any Offer.

43. All documents concerning any grant or exercise of stock options to any officer or director of CVCI.

44. All documents concerning any Individual Defendant's transactions in any Ness securities during the Relevant Time Period.

45. All documents concerning any agreement between Ness and CVCI on the one hand, and any of the Individual Defendants on the other hand, including, but not limited to, consulting, employment, or compensation agreements, indemnification agreements, stock option agreements, and pension plans.

46. All documents concerning any transition incentive agreements between CVCI and the Individual Defendants, including Defendant Gerlitz and Ofer Segev, Executive Vice President and Chief Financial Officer of Ness.

47. All documents concerning the termination fee(s) or termination provision(s) agreed to by Ness and CVCI in connection with the Proposed Transaction.

48. All documents concerning the topics discussed and negotiated between the Special Committee's advisors and the legal advisor to the Board with management and CVCI and its representatives, between June 3, 2011 through June 7, 2011, including, for example, lender change in control consents; CVCI's request for a minimum working capital line of credit as a condition to closing; and the disclosure schedules to the Merger Agreement.

49. All documents concerning any communication between Ness and the Individual Defendants in connection with any alternative strategic buyer.

50. All documents concerning any communication, including any agreements, between Ness and the Individual Defendants in connection with any financial buyer, including Bidders A through D.

51. All documents sufficient to disclose any relationship between Ness and Bidders A through D and CVCI.

52. All documents concerning the Individual Defendants' agreements to formally approve the Proposed Transaction.

53. All documents concerning all analyses of potential payments, benefits or reimbursements to each of the Individual Defendants in the event of a merger or change in control, including, without limitation, the Proposed Transaction.

54. All documents concerning any insurance policy taken out by, or for the benefit of, Ness or the Individual Defendants which may provide coverage for liability of any or all of the claims asserted in this action.

55. The working group lists for the Proposed Transaction or other documentation identifying the personnel at Ness and their respective advisors in connection with the Proposed Transaction or any Offer.

56. All documents concerning any communications between the Board, the Special Committee and any other committee or sub-committee of the Board, formed in connection with the Proposed Transaction.

57. All documents concerning any document destruction or retention policy at Ness during the Relevant Time Period.

58. All documents prepared by or provided to any experts you have retained or with whom you have consulted in connection with this litigation that you intend to call to testify at any hearing or trial in this litigation.

59. All documents that demonstrate or otherwise relate to the qualifications and

experience of any expert witness that you intend to call to testify at any hearing or trial in this litigation, including, without limitation, the most recent *curriculum vitae* and/or résumés for each such person.

60. All documents that you intend to introduce or rely upon at any trial or any hearing in this litigation

Dated: July 14, 2011                          **RIGRODSKY & LONG, P.A.**

By: */s/ Brian D. Long*
     Seth D. Rigrodsky (#3147)
     Brian D. Long (#4347)
     Gina M. Serra (#5387)
     919 North Market Street, Suite 980
     Wilmington, DE 19801
**OF COUNSEL:**                                (302) 295-5310

**POMERANTZ HAUDEK**           *Liaison Counsel for Plaintiffs and*
**GROSSMAN & GROSS LLP**       *Member of Plaintiffs' Executive*
Marc I. Gross                             *Committee of the Whole*
Jeremy A. Lieberman
Gustavo F. Bruckner
100 Park Avenue
New York, NY 10017
(212) 661-1100

*Chair of Plaintiffs' Executive*
*Committee of the Whole*

**BROWER PIVER P.C.**
David A.P. Brower
Brian C. Kerr
488 Madison Avenue, 8th Floor
New York, NY 10022
(212) 501-9000

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560

18

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
(202) 524-4290

**MURRAY, FRANK & SAILER LLP**
Marvin L. Frank
Benjamin D. Bianco
Gregory A. Frank
275 Madison Avenue, Suite 801
New York, NY 10016
(212) 683-1818

**LEVI & KORSINSKY, LLP**
Joseph Levi
Michael H. Rosner
30 Broad Street, 15th Floor
New York, NY 10004
(212) 363-7500

**ROBBINS GULLER RUDMAN & DOWD LLP**
Samuel H. Rudman
David A. Rosenfeld
Mark S. Reich
Joseph Russello
Carolina C. Torres
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100

*Members of Plaintiffs' Executive Committee of the Whole*