# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NISSIM BOTTON, On Behalf of Himself and All Others Similarly Situated | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: 2:11-cv-03950 |
| | : | (SRC)(MAS) |
| NESS TECHNOLOGIES, INC., AHARON FOGEL, AJIT BHUSHAN, SATYAM C. CHERUKURI, SASHI GERLITZ, P. HOWARD EDELSTEIN, GABRIEL EICHLER, DAN S. SUESSKIND, MORRIS WOLFSON, CITI VENTURE CAPITAL INTERNATIONAL, JERSEY HOLDING CORPORATION, AND JERSEY ACQUISITION CORPORATION, | : : : : : : : : : | **Oral Argument Requested** |
| | : | |
| Defendants. | : | |

# MEMORANDUM OF LAW IN SUPPORT OF
## THE NESS DEFENDANTS' MOTION TO DISMISS

Robert J. Del Tufo
Andrew Muscato
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
(A Delaware Limited Liability Partnership)
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
Fax:  (212) 735-2000

*Attorneys for Defendants Ness Technologies Inc., Satyam C. Cherukuri, Issachar "Sachi" Gerlitz, Morris Wolfson, Dan S. Suesskind, P. Howard Edelstein and Gabriel Eichler*

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE CASES AND OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

      A.    The Parties ............................................................................................... 2

      B.    The Ness Board Forms A Special Committee Selected From Its
             Majority Of Disinterested And Independent Directors, And
             Negotiates A Premium Offer. ................................................................... 3

      C.    Plaintiff Files A Complaint Challenging The Special Committee's
             Sale Process But Fails To Include Any Detail About The Process. ........... 4

ARGUMENT ................................................................................................................ 5

   I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS
        TO STATE A CLAIM. ............................................................................ 5

   II.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF
        FIDUCIARY DUTY ................................................................................ 6

      A.    Plaintiff Fails To Adequately Plead A Claim For Breach Of The
             Duty Of Loyalty. ..................................................................................... 8

           1.    Plaintiff fails to allege facts challenging the
                 disinterestedness or independence of a majority of Ness's
                 directors ....................................................................................... 8

           2.    Plaintiff fails to state a *Revlon* claim. ........................................... 11

                 (a)    Plaintiff fails to allege that the Special Committee
                       did not run a reasonable process. ....................................... 12

                 (b)    Merely listing standard deal terms does not state a
                       claim for breach of fiduciary duty. ..................................... 14

      B.    Plaintiff Fails To Adequately Plead A Duty Of Care Claim. ................... 17

   III.   PLAINTIFF FAILS TO STATE A DISCLOSURE CLAIM. ............................. 18

      A.    Plaintiff Fails To State A Section 14(a) Or State Law Disclosure
             Claim. ..................................................................................................... 19

1.    The preliminary proxy does not contain any material
       omissions regarding the background of the merger.......................20

2.    The preliminary proxy does not contain any material
       omissions regarding Jefferies' and BoA Merrill Lynch's
       analyses. ......................................................................................23

B.    Plaintiff Fails To State A Section 20(a) Claim. .........................................26

IV.    PLAINTIFF FAILS TO STATE AN AIDING AND ABETTING CLAIM
        AGAINST NESS. ....................................................................................................28

CONCLUSION.....................................................................................................................30

## TABLE CASES AND OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*In re 3Com S'holders Litig.*,
    C.A. No. 5067-CC, 2009 WL 5173804 (Del. Ch. Dec. 18, 2009)...............14, 25

*Aronson v. Lewis*,
    473 A.2d 805 (1984), *overruled in part on other grounds sub nom.*
    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ...........................................6, 17, 18

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)...................................................................................5, 6

*Barkan v. Amsted Indus., Inc.*,
    567 A.2d 1279 (Del. 1989) ...............................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................5, 6

*Berlin Fin. Ltd. v. MPW Indus. Servs. Grp., Inc.*,
    No. 2:07-cv-442, 2008 WL 161309 (S.D. Ohio Jan. 15, 2008)........................26

*Binks v. DSL.net, Inc.*,
    C.A. No. 2823-VCN, 2010 WL 1713629 (Del. Ch. Apr. 29, 2010)................28

*Blackmore Partners, L.P. v. Link Energy LLC*,
    C.A. No. 454, 2005 WL 2709639 (Del. Ch. Oct. 14, 2005) ..............................7

*The Bleymeyer v. Monogram Biosciences, Inc.*,
    C.A. No. 4703-CC (Del. Ch. July 9, 2009) (TRANSCRIPT)....................14, 15

*Bond Opportunity Fund v. Unilab Corp.*,
    No. 99 Civ. 11074(JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003)........24

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)........................................................................19, 26

*In re CheckFree Corp. S'holders Litig.*,
    C.A. No. 3193-CC, 2007 WL 3262188 (Del. Ch. Nov. 1, 2007) ................23, 25

*In re Cogent, Inc. S'holder Litig.*,
    7 A.3d 487 (Del. Ch. 2010)...............................................................................15

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004).........27

*In re Dollar Thrifty S'holder Litig.*,
    14 A.3d 573 (Del. Ch. 2010).................................................................12, 15, 16

*In re Exxon Mobil Corp. Sec. Litig.*,
    387 F. Supp. 2d 407 (D.N.J. 2005), *aff'd*, 500 F.3d 189 (3d Cir. 2007) ...........................19

*Fagin v. Gilmartin*,
    432 F.3d 276 (3d Cir. 2005)............................................................................6

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)............................................................................5

*In re Frederick's of Hollywood, Inc. S'holders Litig.*,
    C.A. No. 15944, 2000 WL 130630 (Del. Ch. Jan. 31, 2000) ........................................7, 10

*In re Gen. Motors (Hughes) S'holder Litig.*,
    C.A. No. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005),
    *aff'd*, 897 A.2d 162 (Del. 2006) .......................................................................23, 24

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
    C.A. No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007)........................ *passim*

*In re IXC Commc'ns, Inc. S'holders Litig.*,
    C.A. Nos. 17324, 17334, 1999 WL 1009174 (Del. Ch. Oct. 27, 1999) ..........................15

*In re JCC Holding Co.*,
    843 A.2d 713 (Del. Ch. 2003).........................................................................24

*Johnson v. Glassman*,
    401 N.J. Super. 222 (App. Div. 2008) ................................................................6

*Krim v. ProNet, Inc.*,
    744 A.2d 523 (Del. Ch. 1999)........................................................................10

*In re Lear Corp. S'holder Litig.*,
    926 A.2d 94 (Del. Ch. 2007), *subsequently dismissed for*
    *failure to state a claim*, 967 A.2d 640 (Del. Ch. 2008) .................................11, 12, 15, 16

*In re Lear Corp. S'holder Litig.*,
    967 A.2d 640 (Del. Ch. 2008).......................................................................8, 17

*Lewis v. Leaseway Transp. Corp.*,
    C.A. No. 8720, 1990 WL 67383 (Del. Ch. May 16, 1990) .............................................17

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720 (Del. Ch. 1999), *aff'd mem. sub nom.*
    *Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000) .......................................................21

iv

*Lyondell Chem. Co. v. Ryan*,
 970 A.2d 235 (Del. 2009) ...................................................................8, 12

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
 11 A.3d 1175 (Del. Ch. 2010)..................................................................25

*McMillan v. Intercargo Corp.*,
 768 A.2d 492 (Del. Ch. 2000)...........................................................11, 14

*In re Metricom Sec. Litig.*,
 No. C-01-4085 PJH, 2004 WL 966291 (N.D. Cal. Apr. 29, 2004),
 *aff'd sub nom.*, *Young v. Dreisbach*, 182 F. App'x 714 (9th Cir. 2006)..........................21

*In re MONY Grp. Inc. S'holder Litig.*,
 852 A.2d 9 (Del. Ch. 2004)...........................................................10, 24

*In re NAHC, Inc. Sec. Litig.*,
 306 F.3d 1314 (3d Cir. 2002)....................................................................19

*Nebenzahl v. Miller*,
 C.A. No. 13206, 1993 WL 488284 (Del. Ch. Nov. 8, 1993)..........................9, 10

*Nebenzahl v. Miller*,
 C.A. No. 13206, 1996 WL 494913 (Del. Ch. Aug. 26, 1996)..........................28

*In re Netsmart Technologies, Inc. Shareholders Litigation*,
 924 A.2d 171 (Del. Ch. 2007)...........................................................25, 26

*In re NYMEX S'holder Litig.*,
 C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051
 (Del. Ch. Sept. 30, 2009) ...........................................................11, 28

*Orman v. Cullman*,
 794 A.2d 5 (Del. Ch. 2002)...........................................................8, 9

*In re Pennaco Energy, Inc.*,
 787 A.2d 691 (Del. Ch. 2001)....................................................................9

*Porter v. Texas Commerce Bancshares, Inc.*,
 C.A. No. 9114, 1989 WL 120358 (Del. Ch. Oct. 12, 1989)..........................17

*Rales v. Blasband*,
 634 A.2d 927 (Del. 1993) ....................................................................8

*Related Westpac LLC v. JER Snowmass LLC*,
 C.A. No. 5001-VCS, 2010 WL 2929708 (Del. Ch. July 23, 2010)..................28

*Rosenblatt v. Getty Oil Co.*,
    493 A.2d 929 (Del. 1985) .................................................................................20

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC), 2010 WL 2464746 (D.N.J. June 9, 2010) ...............................20

*SEC v. Pasternak*,
    561 F. Supp 2d 459 (D.N.J. 2008) ....................................................................26

*Seinfeld v. Becherer*,
    461 F.3d 365 (3d Cir. 2006)............................................................................19

*Shearin v. E.F. Hutton Group, Inc.*,
    652 A.2d 578 (Del. Ch. 1994) .........................................................................17

*In re Siliconix Inc. S'holders Litig.*,
    C.A. No. 18700, 2001 WL 716787 (Del. Ch. June 19, revised June 21, 2001)................22

*Steamfitters Local Union 447 ex rel. inVentive Health, Inc. v. Walter*,
    C.A. No. 5492-CC (Del. Ch. June 21, 2010) (TRANSCRIPT)......................................24

*Stroud v. Grace*,
    606 A.2d 75 (Del. 1992) ...............................................................................26

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) .................................................................................8

*In re Synchronoss Sec. Litig.*,
    705 F. Supp. 2d 367 (D.N.J. 2010) ..................................................................27

*TCG Sec., Inc. v. S. Union Co.*,
    C.A. No. 11282, 1990 WL 7525 (Del. Ch. Jan. 31, 1990) .................................22

*In re Toys "R" Us, Inc. S'holder Litig.*,
    877 A.2d 976 (Del. Ch. 2005)...................................................................15, 16

*In re Tyson Foods, Inc.*,
    155 F. App'x. 53 (3d Cir. 2005).......................................................................27

*Van de Walle v. Unimation, Inc.*,
    C.A. No. 7046, 1991 WL 29303 (Del. Ch. Mar. 7, 1991) .................................22

*Walter v. Holiday Inns, Inc.*,
    985 F.2d 1232 (3d Cir. 1993).........................................................................25

*Wayne Cnty. Emps.' Ret. Sys. v. Corti*,
    954 A.2d 319 (Del. Ch. 2008).........................................................................19

*Wayne Cnty. Emps.' Ret. Sys. v. Corti,*
    C.A. No. 3534-CC, 2009 WL 2219260 (Del. Ch. July 24, 2009),
    *aff'd mem.*, 996 A.2d 795 (Del. 2010)..............................................................................12

*Weil v. Morgan Stanley DW Inc.,*
    877 A.2d 1024 (Del. Ch. 2005)..........................................................................................27

*In re Wheelabrator Techs., Inc. S'holders Litig.,*
    C.A. No. 11495, 1992 WL 212595 (Del. Ch. Sept. 1, 1992)......................................12, 13

*Winer Family Trust v. Queen,*
    503 F.3d 319 (3d Cir. 2007)...............................................................................................27

## AUTHORITIES

15 U.S.C. § 78n(a) ...................................................................................................................19

15 U.S.C. § 78t(a) ....................................................................................................................26

15 U.S.C. § 78u-4(b)(1) ...........................................................................................................19

Defendants Ness Technologies Inc. ("Ness" or the "Company"), Satyam C. Cherukuri, Issachar "Sachi" Gerlitz, Morris Wolfson, Dan S. Suesskind, P. Howard Edelstein and Gabriel Eichler (the "Independent Directors," and, together with Ness, the "Ness Defendants") hereby respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Class Action Complaint For Violations of the Federal Securities Laws And for Breach of Fiduciary Duties (the "Complaint").

## PRELIMINARY STATEMENT

On June 10, 2011, Ness, a Delaware corporation, and Citi Venture Capital International ("CVCI") announced that they had entered into a definitive Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Ness stockholders will receive $7.75 per share in cash – a 17.6% premium over the closing price of Ness stock on June 9, 2011 (the "Proposed Transaction").  The Proposed Transaction is the product of an extensive eleven-month sales process in which twenty-seven additional strategic and financial buyers were contacted, five bidders emerged, and an independent special committee (the "Special Committee") obtained a 41% increase over the initial bid price.  Nevertheless, on July 7, 2011, Plaintiff brought this action alleging that the Ness board of directors breached its fiduciary duties by conducting an inadequate sale process and approving an unfair sale price.

The Complaint fails to state a claim and should be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(6).  The Independent Directors' actions are protected by Delaware's business judgment rule and Plaintiff makes no allegations sufficient to rebut the business judgment rule.  Specifically, Plaintiff does not allege that a majority of Ness's board of directors: (i) engaged in self-dealing or were otherwise interested in the transaction; (ii) lacked independence; or (iii) conducted a grossly negligent search for the best value reasonably

available for Ness's stockholders.  Plaintiff also fails to allege adequately that the preliminary

proxy omitted any material facts.  Thus, Plaintiff has not set forth any factual allegations from

which this Court could reasonably infer that there is a plausible claim that the Ness Defendants

breached their fiduciary duties under Delaware law.  Where, as here, a plaintiff offers only

unsupported criticisms of an extensive sales process resulting in a proposed transaction that

offers stockholders the opportunity for a remarkable premium, the complaint should be

dismissed.

## STATEMENT OF FACTS[1]

### A.     The Parties

Defendant Ness is a Delaware corporation, with world headquarters in Tel Aviv,

Israel.  (Compl. ¶ 13)  Ness operates in North America, Europe, Israel and India and is publicly

traded on the NASDAQ Global Select Market and the Tel Aviv Stock Exchange under the

symbol "NSTC."  (Compl. ¶¶ 13, 35)

Defendant CVCI is a Delaware corporation specializing in private equity

investments and investment advisory services.  (Compl. ¶ 24)

Defendants Jersey Acquisition Corporation and Jersey Holding Corporation are

Delaware corporations.  Jersey Acquisition Corporation is a wholly-owned subsidiary of Jersey

Holding Corporation, which is an affiliate of CVCI.  (Compl. ¶¶ 25-26)

Defendant Ajit Bhushan is a member of the Ness Board of Directors (the "Ness

Board") and is one of the managing directors of CVCI.  (Compl. ¶ 15)

---

[1]     Facts in the Complaint are assumed true only for the purposes of this motion.

Defendant Issachar "Sachi" Gerlitz is a member of the Ness Board as well as Ness's president and CEO.  (Compl. ¶ 17)  He has not negotiated any continued employment with CVCI.  (Compl. ¶ 53)

Defendant Morris Wolfson is a member of the Ness Board and is the founder of Ness.  (Compl. ¶ 21)

The remaining five defendants comprise the rest of the Ness Board and have no affiliation with Ness or CVCI other than their presence on the Ness Board.  (Compl. ¶¶ 14, 16, 19-20)[2]

**B.      The Ness Board Forms A Special Committee Selected From Its Majority Of Disinterested And Independent Directors, And Negotiates A Premium Offer.**

The Proposed Transaction was approved by both a board comprised of a majority of disinterested and independent directors and by the subset of those directors who served on the Special Committee.  In response to an initial unsolicited indication from CVCI that it would be interested in exploring a possible transaction in which affiliated funds of CVCI would pay $5.50 to $5.75 per share to acquire all of Ness's outstanding equity securities, the Ness Board established the Special Committee – originally comprised of four disinterested and independent directors.  (Compl. ¶ 51)  The Special Committee hired independent legal and financial advisors, Ropes & Gray LLP and Jefferies & Co. ("Jefferies").  (Compl. ¶ 51)  The Ness Board (excluding Mr. Bhushan, who had a conflict because of his position with CVCI) was independently advised by Olshan Grundman Frome Rosenzweig & Wolosky LLP as its legal advisor and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BoA Merrill Lynch") as its financial advisor.  (Compl. ¶

---

2      The Plaintiff names Aharon Fogel as a defendant, stating that he has been a member and Chairman of the Ness Board since 1999.  (Compl. ¶ 14)  However, Mr. Fogel retired from the Ness Board effective January 31, 2011.  (Ness Technologies, Inc., Current Report (Form 8-K) (Feb. 2, 2011))

51) The Special Committee ran a thorough process in which it solicited bids from more than two dozen strategic and financial partners. (Compl. ¶¶ 51-52) Ultimately, the Special Committee unanimously recommended the Proposed Transaction to the Ness Board because it "deliver[ed] significant value and [was] in the best interest of [Ness] stockholders." (Compl. ¶ 51) The Ness Board (excluding Mr. Bhushan) – comprised of a majority of disinterested and independent directors – approved the Proposed Transaction upon receiving the recommendation of the Special Committee. (Compl. ¶¶ 14, 16-17, 19-21, 51)[3]

On June 10, 2011, Ness and CVCI announced the Merger Agreement whereby an affiliate of CVCI will acquire all of Ness's outstanding shares (other than shares then owned by CVCI or its affiliates) for $7.75 per share. (Compl. ¶ 2) The Proposed Transaction represents a value of $307 million for the Ness stockholders. (Compl. ¶ 1)

## C.   Plaintiff Files A Complaint Challenging The Special Committee's Sale Process But Fails To Include Any Detail About The Process.

Plaintiff's Complaint closes by asking this Court to enjoin the transaction "unless and until the Company adopts and implements a procedure or process to obtain a Proposed Transaction agreement providing the best possible terms." (Compl. Prayer C) But Plaintiff never alleges anything that was deficient about the sale process nor any reason to believe the Proposed Transaction does not already represent "the best possible terms." Nowhere does Plaintiff allege that:

- the Special Committee members were not disinterested and independent;

- the Special Committee or the Ness Board failed to hire independent advisors;

---

[3]   Both Jefferies and BoA Merrill Lynch deemed the Proposed Transaction fair to the Ness stockholders. (Compl. ¶¶ 67-68)

- the Special Committee failed to meet regularly'

- the Special Committee failed to contact other possible strategic partners;

- the Special Committee pushed through a quick and cursory process;

- the Special Committee or the Ness Board was uninformed about (i) the Proposed Transaction, (ii) the markets in which Ness competes, (iii) the business and value of Ness, (iv) the future prospects of Ness, or (v) the negotiation process that led to the Merger Agreement;

- the Special Committee failed to ask the many bidders it solicited for more money;

- Mr. Bhushan (the one director who had a conflict) was in any way involved with the process; and

- the Ness Board is not comprised of a majority of disinterested and independent directors.

In the complete absence of any allegations that would rebut the business judgment rule, the Complaint should be dismissed.

## ARGUMENT

## I.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  *Accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (the pleading standard after *Iqbal* and *Twombly* is "a more heightened form of pleading, requiring a plaintiff to plead more than the

5

possibility of relief to survive a motion to dismiss").  Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Thus, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" each necessary element.  *Twombly*, 550 U.S. at 556.

As explained below, Plaintiff fails to adequately allege any facts showing (i) that the Independent Directors breached their fiduciary duties of loyalty and due care, (ii) that the Independent Directors omitted any material facts from the preliminary proxy statement, and (iii) that Ness aided and abetted the purported breaches of fiduciary duty by the Independent Directors.  Accordingly, the Complaint should be dismissed.

## II.     PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

"A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (1984), *overruled in part on other grounds sub nom. Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  *See also Johnson v. Glassman*, 401 N.J. Super. 222, 229 (App. Div. 2008) (same).[4]  This "'cardinal precept'" is embodied in the *business judgment rule*, which is the "'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the

---

[4]     "Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs." *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005).  Because Ness is a Delaware corporation (Compl. ¶ 13), the substantive law of Delaware applies.  *See id.* (applying Delaware law to fiduciary duty claims because defendant was a Delaware corporation).

best interests of the company.'"  *Globis Partners, L.P. v. Plumtree Software, Inc.*, C.A. No. 1577-VCP, 2007 WL 4292024, at *4 (Del. Ch. Nov. 30, 2007) (citation omitted).

A complaint that fails to contain factual allegations sufficient to rebut the business judgment rule must be dismissed.  *Globis*, 2007 WL 4292024 at *9 (dismissing plaintiffs' claim that the defendants breached their fiduciary duties because the board's decision to engage in the merger was protected by the business judgment rule).  To rebut the business judgment rule, a plaintiff must adequately allege a breach of either the duty of loyalty or the duty of care. Moreover, it is not enough simply to allege such a breach by a minority of directors.  To rebut the business judgment rule, a plaintiff must allege facts that establish a material conflict of interest or gross negligence by a majority of a board of directors.  *See, e.g.*, *Blackmore Partners, L.P. v. Link Energy LLC*, C.A. No. 454, 2005 WL 2709639, at *7 (Del. Ch. Oct. 14, 2005) (noting that protections of the business judgment rule insulate a board decision from challenge so long as a majority of directors approving the transaction remain disinterested and independent); *In re Frederick's of Hollywood, Inc. S'holders Litig.*, C.A. No. 15944, 2000 WL 130630, at *7 (Del. Ch. Jan. 31, 2000) (dismissing fiduciary duty claim because plaintiff alleged that only one of four directors was interested and because the challenged merger was approved by a majority of disinterested and independent directors).

In this case, in order that to rebut the business judgment rule, Plaintiff must successfully challenge the disinterest and independence of four of the seven members of the Ness Board.  Plaintiff has failed to include any such allegations.

A.     **Plaintiff Fails To Adequately Plead A Claim For Breach Of The Duty Of Loyalty.**

1.     **Plaintiff fails to allege facts challenging the disinterestedness or independence of a majority of Ness's directors.**

To state a claim for breach of the duty of loyalty, Plaintiff must establish that a majority of the board of directors was:  (1) "interested" in the merger – meaning they "received, or [were] entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders," *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); (2) "lacked independence" in connection with the merger – meaning that a majority of the directors was "so under [the] influence" of an interested party "that their discretion was sterilized," *id.* at 936; or (3) failed to act in good faith – meaning they consciously acted in a manner contrary to the interests of stockholders.  *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008).[5]

"To establish that a board was interested or lacked independence, a plaintiff must allege facts as to the interest and lack of independence of the *individual* members of that board." *Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002) (emphasis in original).  Whether a director has a disabling self-interest under Delaware law is determined based upon a subjective standard and arises in two circumstances:  (1) when the director personally receives a benefit or suffers a detriment resulting from a transaction which is not shared with or suffered by other shareholders and the benefit or detriment "is of such ... material significance to that particular director that it is reasonable to question whether that director objectively considered the advisability of the

---

[5]     The duty of good faith is properly viewed as one component of a director's duty of loyalty. *Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006).  In order to plead a breach of good faith, Plaintiff must allege facts showing that the Independent Directors "utterly failed to attempt to obtain the best sale price." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 244 (Del. 2009). Plaintiff makes no attempt to do so here – nor could he – so the Ness Defendants do not address this prong.

challenged transaction to the corporation and its shareholders," and (2) when "a director stands

on both sides of the challenged transaction." *Id.* at 25 n.50.  In the situation where a director is

alleged to have received a benefit not equally shared by the stockholders, facts must be alleged

showing materiality "'in the context of the director's economic circumstances.'"  *Id.* at 23

(citation omitted).

       While Plaintiff claims in conclusory fashion that the Ness Board acted disloyally

(Compl. ¶¶ 32, 90), his claim fails as a matter of law because the Complaint does not allege – let

alone allege with any specificity – that a majority of the Ness Board members were interested or

lacked independence in the Proposed Transaction.  Generally, Plaintiff tries to demonstrate that a

majority of the Ness Board is interested in the merger by lumping all of the directors together

and making essentially one broad allegation:  that they stand to receive change of control

payments in connection with the Proposed Transaction.[6]  (Compl. ¶ 53)  This does not state a

claim against the directors for breach of fiduciary duty.  *See Nebenzahl v. Miller*, C.A. No. 13206,

1993 WL 488284, at *3 (Del. Ch. Nov. 8, 1993) (finding no reasonable probability of breach of

the duty of loyalty simply because merger agreement included the guarantee of payment of

---

[6]   Plaintiff makes a similar allegation against Ness's executives and officers, stating that "members of the Company's management will continue their employment with the Company following the consummation of the Proposed Transaction."  (Compl. ¶ 53)  This does not state a claim that the Ness Board was interested.  First, the mere fact that an executive has a change of control agreement and may retain his or her position in a post-merger company does not state a claim.  *See In re Pennaco Energy, Inc.*, 787 A.2d 691, 709-10 (Del. Ch. 2001) (describing the utility of change of control payments and refusing to enjoin tender offer which would trigger change of control payments for two directors and several key executives).  Second, even if this did somehow make an officer interested, Plaintiff does not allege how the benefits to Ness *officers* confer material benefits on Ness *directors*.  *See Globis*, 2007 WL 4292024, at *8 n.58 ("[Plaintiff] also highlights the compensation received by several non-Defendant Plumtree executives.  The Court does not see the relevance of these non-Defendants or the benefits they received.").  In any event, Plaintiff admits that there are no employment agreements between the Ness Board and CVCI.  (Compl. ¶ 53)

change of control benefits to directors); *In re MONY Grp. Inc. S'holder Litig.,* 852 A.2d 9, 20 (Del. Ch. 2004) (rejecting, as a matter of law, plaintiff's argument that board was not disinterested and independent because CEO (who negotiated transaction) stood to gain from change of control benefits).  Plaintiff also states "all unvested stock options and restricted stock units will immediately vest and will entitle the holders to immediate payment."  (Compl. ¶ 55) But under Delaware law, this does not state a claim.  The Delaware Court of Chancery has held that "accelerated vesting of options does not create a conflict of interest because the interests of the shareholders and directors are aligned in obtaining the highest price."  *Globis*, 2007 WL 4292024, at *8; *Krim v. ProNet, Inc.*, 744 A.2d 523, 528 (Del. Ch. 1999) ("Defendant directors disclosed in the Proxy Statement that their options would vest and some ProNet directors would retain board seats in the merged entity…. [N]either the vesting of the options nor the fact some ProNet directors retained board seats in the merged entity created a 'substantial conflict'….").

Specifically, Plaintiff alleges that Mr. Gerlitz is conflicted because he will receive a financial bonus as result of the Proposed Transaction.  (Compl. ¶¶ 54, 55)  This claim fails for two reasons.  *First*, nowhere does Plaintiff allege that Mr. Gerlitz was a member of the Special Committee or that he approved his own change of control package.  *Second*, as discussed above, change of control plans do not alone support a claim for breach of the duty of loyalty.  *See Nebenzahl*, 1993 WL 488284, at *3.  Thus, Plaintiff fails to adequately allege any facts demonstrating that Mr. Gerlitz was anything other than an independent and disinterested director when he approved the Proposed Transaction.

Even assuming that Mr. Gerlitz was conflicted (which he was not), this still leaves a majority of the Ness Board unchallenged by Plaintiff.  *See In re Frederick's of Hollywood*, 2000 WL 130630, at *7 (dismissing loyalty claim because Plaintiff alleged that only one of four

directors was interested, meaning that challenged merger was approved by a majority of disinterested directors).  The Complaint makes no individualized allegations at all about five of the Independent Directors (including the three members of the Special Committee).

For these reasons, Plaintiff's duty of loyalty claim must be dismissed.  *In re NYMEX S'holder Litig.*, C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051, at *6 (Del. Ch. Sept. 30, 2009) ("At the outset, the Court observes that the Plaintiffs must plead sufficient facts to show that a *majority of the Board of Directors* breached the fiduciary duty of loyalty; whether they otherwise would have stated a claim against [two interested directors] would not be controlling.  That two directors may have been conflicted does not, by itself, impinge upon the independence of the remaining members of the Board – all of whom supported the merger.") (emphasis in original); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 496 (Del. Ch. 2000) (dismissing claims where allegations about directors were "sparse at best," and holding that "the complaint alleges no facts suggesting that the independence and disinterestedness of these five directors were in any way compromised").

## 2.    Plaintiff fails to state a *Revlon* claim.

"*Revlon* and its progeny stand for the proposition that when a board has decided to sell the company for cash or engage in a change of control transaction, it must act reasonably in order to secure the highest price reasonably available."  *In re Lear Corp. S'holder Litig.*, 926 A.2d 94, 115 (Del. Ch. 2007), *subsequently dismissed for failure to state a claim*, 967 A.2d 640 (Del. Ch. 2008).  Plaintiff claims that the sales process and the standard deal terms in the Merger Agreement resulted in an offer that "undervalued" Ness.  (Compl. ¶¶ 4, 52)  This claim must fail because (i) Plaintiff alleges no facts demonstrating that the Special Committee failed to run a reasonable sale process and (ii) merely listing standard deal terms – as Plaintiff does here – does not adequately state a *Revlon* claim.

11

        **(a)**    **Plaintiff fails to allege that the Special Committee did not run a reasonable process.**

Plaintiff's scattershot allegations about the sale process undertaken by the Special Committee are not enough to state a *Revlon* claim. Delaware law provides "no single blueprint" by which directors must satisfy their obligations in the context of a sale of control. *See Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1286 (Del. 1989). Indeed, the Delaware Supreme Court recently stated that "there are no legally prescribed steps that directors must follow to satisfy their *Revlon* duties." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235 at 243. *See also Wayne Cnty. Emps.' Ret. Sys. v. Corti*, C.A. No. 3534-CC, 2009 WL 2219260, at *14 (Del. Ch. July 24, 2009) (citing *Lyondell*, and stating "Delaware law does not hold directors liable for failing to carry out a perfect process in a sale of control"), *aff'd mem.*, 996 A.2d 795 (Del. 2010). *Revlon* duties merely require a board to act reasonably. *Globis*, 2007 WL 4292024, at *14; *In re Lear Corp.*, 926 A.2d at 115. "The duty to act reasonably is just that, a duty to take a reasonable course of action under the circumstances presented." *In re Lear Corp.*, 926 A.2d at 115. *See also In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 597 (Del. Ch. 2010) ("The question is whether the alternative approach that the Dollar Thrifty Board adopted was itself a reasonable choice that a loyal and careful board would adopt in the circumstances."). For example, in *In re Wheelabrator Technologies, Inc. Shareholders Litigation*, the Delaware Court of Chancery dismissed *Revlon* claims, holding that there were "no facts … alleged that support a cognizable claim that [*Revlon*] duties were breached here." C.A. No. 11495, 1992 WL 212595, at *8 (Del. Ch. Sept. 1, 1992). The court explained:

> [E]ven if there occurred a "fundamental change of corporate control" that triggered *Revlon* duties under *Barkan*, the plaintiffs have not alleged that WTI's directors were so uninformed about WTI's value that they violated their *Revlon* duties by not conducting an active survey of the market, or "market check."

> What the plaintiffs do allege is that WTI's directors failed to conduct a market check to assure themselves that there were no superior alternative transactions. That, without more, is insufficient. Under *Barkan* the plaintiffs must allege that WTI's directors did not have adequate information about the value of WTI. Here, the Complaint says nothing about what the directors did (or did not) know about WTI's value.

*In re Wheelabrator,* 1992 WL 212595, at *8-9. *See also Globis*, 2007 WL 4292024, at *4 (granting motion to dismiss *Revlon* claims).

Here, Plaintiff does not even allege that the Special Committee failed to undertake a market check – nor could he. Instead, he offers unsupported general criticisms about the Special Committee's sale process without ever explaining what the process entailed. For example, Plaintiff questions why the Ness Board "refused to continue to negotiate in good faith with competing bidders, such as the bidder identified in the Proxy as Bidder D …." (Compl. ¶ 52) But Plaintiff never alleges that Bidder D provided a superior offer, or even a comparable offer, to the offer ultimately made by CVCI. Plaintiff never alleges what Bidder D's last offer was. Plaintiff never alleges that any of the other bidders were willing to continue negotiations. And Plaintiff never alleges that the Special Committee failed to ask Bidder D, or any of the other bidders solicited by the Special Committee, for more money.

In addition, there is no allegation in the Complaint to support an inference that any of the Independent Directors failed to act reasonably during the sale process. Likewise, there is no allegation that any of the Independent Directors were uninformed about (i) the Proposed Transaction, (ii) the markets in which Ness competes, (iii) the business and value of Ness, (iv) the future prospects of Ness, or (v) the negotiation process that led to the Merger Agreement. On the contrary, the Complaint concedes that the Special Committee's extensive process resulted in a premium offer for the Ness stockholders. (Compl. ¶ 51)

13

**(b)     Merely listing standard deal terms does not state a claim for breach of fiduciary duty.**

Nor does Plaintiff state a *Revlon* claim by making various conclusory allegations that the Ness Board members agreed to standard deal terms in the Merger Agreement.  Plaintiff alleges that the Ness Board breached its fiduciary duties and precluded a higher offer when it agreed to three standard deal terms:  (1) a no-shop provision; (2) matching rights; and (3) a termination fee. (Compl. ¶¶ 57-58, 60)  The Delaware Court of Chancery has held that "if [the plaintiff] is going to attack deal protection devices, like match rights, or like no-shops, or like termination fees … [the plaintiff must] specify exactly how they run afoul of a Delaware Court of Chancery decision." *The Bleymeyer v. Monogram Biosciences, Inc.*, C.A. No. 4703-CC, at 31 (Del. Ch. July 9, 2009) (TRANSCRIPT) (denying plaintiff's motion to expedite for failure to state a colorable claim), attached to the Certification of Andrew Muscato as Exhibit B.  Plaintiffs fail to do so here.  In fact, negotiated deal terms such as these are not indicative of a breach of fiduciary duty – they are commonplace.  *See, e.g.*, *In re 3Com S'holders Litig.*, C.A. No. 5067-CC, 2009 WL 5173804, at *7 (Del. Ch. Dec. 18, 2009) (holding that the no-shop provision, the matching rights provision, and the termination fee provision were standard merger terms, were not *per se* unreasonable, and did not constitute breaches of fiduciary duty).

**(i)     The no-shop provision.**

No-shop provisions, which prevent the target corporation from soliciting additional bids after signing a merger agreement, are common and unobjectionable.  *McMillan v. Intercargo Corp.*, 768 A.2d 492 at 506 ("[T]he fact that the merger agreement contained a rather standard no-shop provision does little to bolster the plaintiffs' claim.").  Plaintiff admits that the no-shop provision allows the Ness Board to comply with its fiduciary duties and engage third parties if they submit a superior proposal – a so-called "fiduciary out".  (Compl. ¶ 59)  When a

no-shop provision contains a fiduciary out, it will be upheld.  *See, e.g.*, *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 502 (Del. Ch. 2010) (approving a no-shop provision that "allows the Board to engage with any bidder who makes an offer that the Board determines in good faith 'would reasonably be expected to result in or lead to, a Superior Proposal'") (citation omitted); *In re Dollar Thrifty*, 14 A.3d at 593 (approving a no-shop provision with fiduciary out that permitted the target to engage "with another bidder if the bidder has made a proposal that the Board determines is reasonably likely to lead to a superior offer"); *In re IXC Commc'ns, Inc. S'holders Litig.*, C.A. Nos. 17324, 17334, 1999 WL 1009174, at *6 (Del. Ch. Oct. 27, 1999) (applying business judgment rule and dismissing claim that board breached its duty of care in agreeing to no-shop provision because the board was well-informed about the value of the company and the no-shop provision was subject to a fiduciary out).

### (ii)    The matching rights provision.

A "matching rights" provision allows an original buyer to match any competing offer made by a third party after the execution of a merger agreement.  (Compl. ¶ 58)  Like a no-shop provision, matching rights "are hardly novel" and have been upheld as reasonable in the face of breach of fiduciary duty claims.  *The Bleymeyer*, C.A. No. 4703-CC, Tr. at 31 ("Citing me to the Iowa law review and Stanford law review with respect to match rights is quibbling with our law.  The plaintiffs may not like our law, but we've upheld match rights as legitimate provisions in merger agreements."); *In re Lear Corp.*, 926 A.2d 94 at 120 (upholding matching rights and noting "the undisputed reality that second bidders have been able to succeed in the face of a termination fee/matching right combination").  *See also In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 976, 1018-19 (Del. Ch. 2005) (noting that "it would not be unreasonable for the board to grant a substantial termination fee and matching rights … if that was necessary to successfully wring out a high-value bid"); *In re Cogent, Inc.*, 7 A.3d at 502 ("Potential suitors

often have a legitimate concern that they are being used merely to draw others into a bidding war.

Therefore, in an effort to entice an acquirer to make a strong offer, it is reasonable for a seller to

provide a buyer with some level of assurance that he will be given adequate opportunity to buy

the seller, even if a higher bid later emerges ....  Plaintiffs have not shown that Company D or

any other bidder was precluded by the challenged provisions from successfully making a higher

offer.").

      Here, Plaintiff's conclusory allegation that the matching rights "discourage

bidders from making a competing bid" stands in stark contrast to settled case law and common

practice.  (Compl. ¶ 62)  In addition, nowhere has Plaintiff alleged that another bidder is waiting

in the wings to offer a superior bid but unwilling or unable to bid because of the matching rights

provision.

### (iii)   The termination fee.

      Reasonable termination fees are also routinely upheld.  They compensate an

initial acquirer when a topping bidder emerges.  Indeed, courts routinely approve termination

fees of 3-4% of the deal value.  *See, e.g.*, *In re Lear Corp.*, 926 A.2d at 119-20 (approving a

termination fee of 3.5% of the equity value and 2.4% of the enterprise value); *In re Toys "R" Us

S'holder Litig.*, 877 A.2d 975 at 1019-21 (upholding a 3.75% termination fee and matching

rights).  The termination fee maximizes stockholder value in two important ways:  1) it

encourages premium deal-making because a "stalking horse" initial acquirer is compensated for

its expenses, and 2) it deters "fractional topping" from another bidder.  *In re Dollar Thrifty*, 14

A.3d at 575 (stating that a termination fee forces a third-party bidder to "dig deep" and come up

with a materially better offer).  Here, Plaintiff alleges that the Individual Defendants breached

their fiduciary duties by agreeing to an $8.35 million termination fee.  (Compl. ¶ 60)  This fee

represents only 2.7% of the deal value and is well ***below*** termination fees routinely approved by the Delaware Court of Chancery.

In short, Plaintiff fails to allege any facts that indicate this transaction was flawed in any way.  Implicit in Plaintiff's allegations concerning other bidders is the conclusion that this deal was "fully shopped."  (Compl. ¶ 52)  Without any viable process allegations, Plaintiff's Complaint boils down to one claim:  that the price is unfair.  (Compl. ¶¶ 4, 37-50, 52, 91)  He spends pages detailing Ness's promising financial prospects (Compl. ¶¶ 37-50), but "repeated allegations of the inadequacy of the merger price do not themselves create a claim" and "may be disposed of summarily."  *Porter v. Texas Commerce Bancshares, Inc.*, C.A. No. 9114, 1989 WL 120358, at *4-5 (Del. Ch. Oct. 12, 1989).  *See also Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 592 (Del. Ch. 1994) (dismissing an unfair price claim because complaint "alleges no procedural defect in the course of the merger or other non-price related basis for an injunction or other equitable remedy"); *Lewis v. Leaseway Transp. Corp.*, C.A. No. 8720, 1990 WL 67383  at *5 (Del. Ch. May 16, 1990) (dismissing an unfair price claim that did not "adequately allege self-dealing, lack of independence, or failure, on the part of the [target] board, to adequately inform itself").

**B.     Plaintiff Fails To Adequately Plead A Duty Of Care Claim.**

For similar reasons, Plaintiff has also failed to plead a duty of care claim against the Ness Board.  To adequately plead a duty of care claim, a plaintiff must aver facts showing "gross negligence" by the board of directors.  *Aronson v. Lewis*, 473 A.2d at 812 & n.6.  "The definition of gross negligence used in [Delaware] corporate law jurisprudence is extremely stringent."  *In re Lear Corp.*, 967 A.2d at 651-52.  It is defined as "'reckless indifference to or a deliberate disregard of the whole body of stockholders' or actions which are without the bounds

of reason.'"  *Id.* at n.45 (citing *Tomczak v. Morton Thiokol, Inc.*, C.A. No. 7861, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990)).

The Complaint does not even come close to alleging that the Independent Directors acted with gross negligence in considering whether to approve the Proposed Transaction.  Nowhere does Plaintiff allege that the Special Committee failed to meet regularly. Nowhere does Plaintiff allege that the Special Committee failed to contact other possible strategic partners.  Nowhere does Plaintiff allege that the Special Committee pushed through a quick and cursory process.  Nowhere does Plaintiff allege that the Special Committee or the Ness Board was uninformed about (i) the Proposed Transaction, (ii) the markets in which Ness competes, (iii) the business and value of Ness, (iv) the future prospects of Ness, or (v) the negotiation process that led to the Merger Agreement.  Nowhere does Plaintiff allege that the Special Committee failed to ask the multiple bidders it solicited for more money.  In fact, the Complaint would not state a claim for lack of due care even if mere negligence were the applicable standard, and it is not.  *Aronson*, 473 A.2d at 812 (stating that the standard for breach of the duty of care is "predicated upon concepts of gross negligence").

## III.    PLAINTIFF FAILS TO STATE A DISCLOSURE CLAIM.

Plaintiff alleges that the Ness Defendants violated Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and breached their state law fiduciary duty of disclosure by omitting material facts from the preliminary proxy.  (Compl. ¶¶ 76, 90)  Relatedly, Plaintiff alleges that because the Ness Defendants violated Section 14(a) of the Exchange Act, they also violated Section 20(a) of the Exchange Act.  For the reasons discussed below, these claims must fail.

A.      **Plaintiff Fails To State A Section 14(a) Or State Law Disclosure Claim.**

Plaintiff alleges that Ness's preliminary proxy omits material facts in violation of

Section 14(a) and state law fiduciary duties.  (Compl. ¶ 7)  Plaintiff's claims fail because he does

not actually identify any material fact that is not disclosed to Ness stockholders.  Section 14(a)

claims are governed by The United States Private Securities Litigation Reform Act of 1995 (the

"PSLRA"), which requires that a complaint "shall specify each statement alleged to have been

misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding

the statement or omission is made on information and belief, the complaint shall state with

particularity all facts on which that belief is formed."  15 U.S.C. § 78n(a); 15 U.S.C. § 78u-

4(b)(1).  *See also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002) (applying

PSLRA standards to Section 14(a) claims); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d

126, 160 (3d Cir. 2004) (affirming district court's dismissal of 14(a) claims because plaintiffs did

not meet the PSLRA's particularity requirements); *In re Exxon Mobil Corp. Sec. Litig.*, 387 F.

Supp. 2d 407 (D.N.J. 2005) (stating a "Section 14(a) claim must meet the PSLRA particularity

requirements"), *aff'd*, 500 F.3d 189 (3d Cir. 2007).  Likewise, Delaware law requires a plaintiff

to establish "'that facts are missing from the [disclosure] statement, identify those facts, state why

they meet the materiality standard and how the omission caused injury.'"  *Wayne Cnty. Emps.'*

*Ret. Sys. v. Corti*, 954 A.2d 319, 330 (Del. Ch. 2008) (quoting *Skeen v. Jo-Ann Stores, Inc.*, 750

A.2d 1170, 1173 (Del. 2000)).

An alleged omission will only violate Section 14(a) "if either the SEC regulations

specifically require disclosure of the omitted information in a proxy statement, or the omission

makes other statements in the proxy statement materially false or misleading.'"  *Seinfeld v.*

*Becherer*, 461 F.3d 365, 369 (3d Cir. 2006) (quoting *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir.

2002)).  "Information is deemed material for purposes of a 14(a) claim 'if there is a substantial

19

likelihood that a reasonable shareholder would consider it important in deciding how to vote.'"

*In re NAHC,* 306 F.3d at 1331 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449

(1976)).  Likewise, Delaware uses the *TSC Industries* materiality standard and requires the

disclosure of all material facts.  *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985).

Here, the only SEC rule cited in the Complaint is Rule 14a-9 – the catch-all

provision – which prohibits the omission of "any material fact necessary in order to make the

[proxy] statements therein not false or misleading."  (Compl. ¶ 75)  Thus, Plaintiff can only

prevail on both his federal and state law disclosure claims if he identifies a material fact omitted

from the preliminary proxy.  He fails to, and his disclosure claims should be dismissed.

### 1. The preliminary proxy does not contain any material omissions regarding the background of the merger.

Plaintiff alleges that the preliminary proxy does not disclose certain information

regarding the background leading up to the merger, including: (i) details regarding the sale

process leading up to the transaction; (ii) an adequate explanation as to why the Ness Board

chose to abandon merger negotiations with Bidder D; and (iii) why Bidder D is accusing Ness of

violating an exclusivity agreement and other specific allegations listed in the June 27, 2011 letter

it sent to Ness.  (Compl. ¶ 66)  Plaintiff's claim fails for several reasons.  *First*, the allegedly

omitted information is actually disclosed at length in the detailed fourteen-page discussion in the

preliminary proxy relating to the background and negotiation of the merger.  (Ness Technologies

Inc., Proxy Statement (Schedule 14A) at 20-33 (June 30, 2011), attached to the Certification of

Andrew Muscato as Exhibit A)[7]  The preliminary proxy lays out in painstaking detail, all

material information about the merger, including, among other things:

- The eleven-month sale process in which twenty-seven potential strategic and financial partners were contacted, a total of five bidders emerged with multiple rounds of increasingly higher offers at the insistence of the Special Committee.  This process ultimately culminated in CVCI's blow-out offer of $7.75 – $0.65 per share higher than Bidder D and providing a 68% premium to Ness's unaffected stock price. (Prelim. Proxy at 21-31)

- The extensive negotiations with Bidders A, B, C, D and CVCI relating to the price of the merger.  Contrary to Plaintiff's allegation, the preliminary proxy clearly states why Ness stopped negotiations with Bidder D –Bidder D refused to increase its price above $7.10. (Prelim. Proxy at 31)[8]

- The Ness financial projections that Jefferies and BoA Merrill Lynch relied upon.  (Prelim. Proxy at 48)

Understandably, courts consistently dismiss disclosure claims when the public filings that

allegedly contain misleading disclosures actually disclose the matters that plaintiffs claim are

---

[7]   This Court may consider "'document[s] integral to or explicitly relied upon in the complaint'" on a motion to dismiss.  *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2010 WL 2464746, at *2 n.8 (D.N.J. June 9, 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff repeatedly references the preliminary proxy.  (Compl. ¶¶ 6, 7, 52, 64-69, 74, 76, 77, 80-84)  Citations to the preliminary proxy will be in the form "(Prelim. Proxy at _)."

[8]   In fact, the preliminary proxy details why each of the four other bidders lost out to CVCI's ultimate offer.  Bidder C, whose only offer was $6.50 per share, withdrew from the process because "it could not effect a transaction without a partner."  (Prelim. Proxy at 24)  Bidder B, whose final offer was $7.00 per share, "declined to proceed with further discussions regarding a potential transaction with Ness."  (Prelim. Proxy at 25)  Bidder A was unwilling to increase its price of $7.30 per share.  (Prelim. Proxy at 26)  Bidder D dropped its earlier offer to $7.10 per share and "indicated that it would not be willing to increase its price …." (Prelim. Proxy at 32)  The preliminary proxy also details that Ness was negotiating with both CVCI and Bidder D and that "Ropes & Gray compared Bidder D's latest proposed revisions to the merger agreement to the proposed revisions that CVCI had submitted on June 2, 2011. Overall Ropes & Gray concluded that the terms of CVCI's proposed revisions were more favorable to us than the terms of Bidder D's latest proposed revisions."  (Prelim. Proxy at 31)

21

omitted.  *See In re Metricom Sec. Litig.*, No. C-01-4085 PJH, 2004 WL 966291, at \*27 (N.D. Cal.

Apr. 29, 2004) (dismissing claims based on alleged omissions in a proxy statement because the

proxy statement disclosed the information that plaintiff claimed was omitted), *aff'd sub nom.*,

*Young v. Dreisbach*, 182 F. App'x 714 (9th Cir. 2006); *In re Lukens Inc. S'holders Litig.*, 757

A.2d 720, 736 (Del. Ch. 1999) (dismissing disclosure claims because "the process [was]

described in considerable detail in the proxy statement"), *aff'd mem. sub nom. Walker v. Lukens,*

*Inc.*, 757 A.2d 1278 (Del. 2000).  Likewise, the disclosure claims should be dismissed for this

reason alone.

        *Second*, each of these alleged omissions is immaterial as a matter of law.  Courts

consistently hold that where an "'arm's-length negotiation has resulted in an agreement which

fully expresses the terms essential to an understanding by shareholders of the impact of the

merger, it is not necessary to describe all the bends and turns in the road which led to that

result.'"  *Van de Walle v. Unimation, Inc.*, C.A. No. 7046, 1991 WL 29303, at \*15 (Del. Ch. Mar.

7, 1991) (citation omitted).  *See also In re Siliconix Inc. S'holders Litig.*, C.A. No. 18700, 2001

WL 716787, at \*14 (Del. Ch. June 19, revised June 21, 2001) ("there is no right to a 'play-by-

play' of the negotiation or review process").  "The simple fact of the matter is that a reasonable

line has to be drawn or else disclosures in proxy solicitations will become so detailed and

voluminous that they will no longer serve their purpose." *TCG Sec., Inc. v. S. Union Co.*, C.A.

No. 11282, 1990 WL 7525, at \*7 (Del. Ch. Jan. 31, 1990).

        Furthermore, Plaintiff does not allege how Bidder D's letter is material to any

reasonable investor.  Indeed, it is irrelevant to the transaction.  Although Ness could always add

"additional information" on any subject, "Delaware law does not require disclosure of 'all

available information' simply because available information 'might be helpful.'  The plaintiff has

the burden of demonstrating materiality." *In re Siliconix Inc. S'holders Litig.*, 2001 WL 716787, at *9 (citations omitted).  Plaintiff does not explain how a letter claiming that Ness violated exclusivity could possibly have lowered CVCI's price, and Bidder D refused to increase its price above $7.10 long before sending the letter.  (Prelim. Proxy at 31)  Accordingly, Plaintiff's claim that the Ness Defendants omitted material information regarding the sale process fails as a matter of law.

> ### 2.    The preliminary proxy does not contain any material omissions regarding Jefferies' and BoA Merrill Lynch's analyses.

Plaintiff alleges that the preliminary proxy fails to disclose certain information regarding Jefferies' and BoA Merrill Lynch's analyses, including the following: "the criteria to select the companies" in its Selected Companies Analysis, "the rationale for selecting the companies used" in its Selected Transactions Analysis, the "definition of 'free cash flows' used in its Discounted Cash Flow Analysis, Ness's projected unlevered free cash flows, and the rationale for selecting various multiples and ranges."  (Compl. ¶¶ 67-69)  Once again, Plaintiff's claim fails for two reasons.  *First*, the preliminary proxy discloses much of the information that Plaintiff claims was omitted.  For example, it discloses that all of the selected companies were information technology and consulting service companies.  (Prelim. Proxy at 39, 43)  It also states that the transactions selected for Jefferies' and BoA Merrill Lynch's Selected Transactions Analyses all involved information technology consulting and business service companies.  (Prelim. Proxy at 40, 44)  In addition, the preliminary proxy discloses extensive financial data and projections, including detailed information regarding the raw inputs Jefferies and BoA Merrill Lynch used, such as multiples, ranges, discount rates and dates.  (Prelim. Proxy at 37-46)

*Second*, the law requires only a fair summary of the valuation analyses performed by Jefferies and BoA Merrill Lynch.  *In re CheckFree Corp. S'holders Litig.*, C.A. No. 3193-CC,

2007 WL 3262188, at *3 (Del. Ch. Nov. 1, 2007) (dismissing disclosure claims because the "proxy statement contains an adequate and fair summary" of the investment banker's analysis). *See also In re Gen. Motors (Hughes) S'holder Litig.*, C.A. No. 20269, 2005 WL 1089021, at *16 (Del. Ch. May 4, 2005) (rejecting the argument that raw data underlying summaries of fairness opinions must be disclosed, noting that "[t]he fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis"), *aff'd*, 897 A.2d 162 (Del. 2006).  A "fair summary" of an investment banker's valuation conclusions "does not require the Board to include [the banker's] entire report exactly as it saw it when it made its decision to recommend the Agreement."  *In re MONY Grp. Inc. S'holder Litig.*, 852 A.2d at 28. In reality, Plaintiff's so-called omissions concerning Jefferies' and BoA Merrill Lynch's fairness opinion are merely "quibbles" about the substance of their opinion, and thus, do not state a disclosure claim.  *See In re JCC Holding Co.*, 843 A.2d 713, 721 (Del. Ch. 2003) ("quibble with the substance of a banker's opinion does not constitute a disclosure claim"); *In re Gen. Motors (Hughes) S'holder Litig.*, 2005 WL 1089021, at *17 ("Plaintiffs simply think the bankers got it wrong – this alone does not state a disclosure claim.") (citation omitted).  *See also Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074(JSM), 2003 WL 21058251, at *5-7 (S.D.N.Y. May 9, 2003) (dismissing plaintiff's complaints about the proxy's purportedly insufficient disclosure of projections, interests of the financial advisor, and underlying data because they "fail[ed] to meet the demanding pleading standards set out by the PSLRA and in the cases").

Likewise,  Plaintiff's allegation that the preliminary proxy is materially misleading because it does not "disclose Ness's unlevered free cash flows or even the key inputs necessary to reach free cash flows" fails.  (Compl. ¶ 69)  But free cash flows are not *per se*

24

material, and Plaintiff alleges no facts that would cause them to be material here.  *See Steamfitters Local Union 447 ex rel. inVentive Health, Inc. v. Walter*, C.A. No. 5492-CC, at 8-9 (Del. Ch. June 21, 2010) (TRANSCRIPT) (denying motion to expedite because free cash flow projections were not material; attached to the Certification of Andrew Muscato as Exhibit C); *In re 3Com*, 2009 WL 5173804, at *2-3 (denying expedition where bankers' discounted cash flow analysis was not accompanied by free cash flow projections because the plaintiffs "failed to assert a colorable claim as to why management should be required to provide full versions of the projections underlying the already disclosed summaries").  The law is clear that directors are not required to bombard stockholders with all of the information that would be necessary for them to perform their own independent valuation analyses.  Thus, "[a] disclosure that does not include all financial data needed to make an independent determination of fair value is not *per se* misleading or omitted a material fact.  The fact that financial advisors may have considered certain non-disclosed information does not alter this analysis." *In re Checkfree Corp.*, 2007 WL 3262188, at *2.  *See also Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1244 (3d Cir. 1993) (affirming judgment for defendants on breach of fiduciary duty claims and holding that the "failure to disclose the 1981 cash flow projection was not a material omission").

Plaintiff will likely rely on *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010), for the proposition that free cash flow estimates are clearly material.  But *Maric* does *not* hold that free cash flow estimates must be disclosed; the court in *Maric* merely held that in cases where management prepared free cash flow estimates and then excised them from the projections disclosed to stockholders, it should put them back in.  Likewise, Plaintiff will likely rely on *In re Netsmart Technologies, Inc. Shareholders Litigation*, 924 A.2d 171 (Del. Ch. 2007), for the proposition that disclosures are materially incomplete if

25

cash flow projections are not disclosed.  (Op. Br. at 13)  However, the court in *Netsmart* required

disclosure of the free cash flow projections because management had provided its financial

advisor with an updated set of projections, but only disclosed an older set in the proxy.

*Netsmart*, 924 A.2d at 202-03.  Here, Plaintiff cannot allege that management even prepared free

cash flow estimates – let alone updated estimates – or that they erased them from the projections

they gave to Jefferies or BoA Merrill Lynch.  *Id.  See also Stroud v. Grace*, 606 A.2d 75, 84

(Del. 1992) (stating that directors have a duty to disclose only "material information *within the*

*board's control*" and not information that does not exist) (emphasis added).  Therefore, Plaintiff's

disclosure claims must be dismissed.

**B.      Plaintiff Fails To State A Section 20(a) Claim.**

   Plaintiff's Section 20(a) claim against the Individual Defendants and Ness fails

because Plaintiff has not adequately pled a primary violation of Section 14(a).  (Compl. ¶¶ 78-86)

Section 20(a) of the Exchange Act provides that a person who controls someone that violates

Section 14(a) may be held liable to the same extent as the controlled person.  *See* 15 U.S.C. §

78t(a).  However, "control person liability under section 20(a) of the 1934 Act … is premised

upon a predicate violation of the 1934 Act," thus, Section 20(a) claims must be dismissed if there

is no underlying violation.  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d at 142, 160

(affirming district court dismissal of Section 20(a) claim because the underlying Section 14(a)

claim failed).  *See also Berlin Fin. Ltd. v. MPW Indus. Servs. Grp., Inc.*, No. 2:07-cv-442, 2008

WL 161309, at *10 (S.D. Ohio Jan. 15, 2008) (granting motion to dismiss plaintiff's Section 20(a)

claim under Federal Rule 12(b)(6), with prejudice, because "'the lack of any predicate violation

of the Securities Exchange Act of 1934 compels dismissal of control person claims'") (quoting

*Cal. Pub. Emps.' Ret. Sys.*, 394 F.3d at 159).

Even if Plaintiff had adequately pleaded a Section 14(a) claim – which he has not – Plaintiff has still failed to adequately plead a Section 20(a) claim because he does not allege that each individual director was a "controlling person."  *See SEC v. Pasternak*, 561 F. Supp 2d 459, 502 (D.N.J. 2008) (stating that a necessary element of a Section 20(a) claim is establishing that the defendant was a "controlling person").  Indeed, "it is well-settled that '[t]he mere fact that an individual is a director of a firm is not sufficient to show he is a control[ling] person of the firm.'"  *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002)*, aff'd*, 357 F.3d 322 (3d Cir. 2004) (citations omitted).  Other than Mr. Gerlitz, none of the other Independent Directors are alleged to have any responsibilities with Ness besides their directorship.  Yet, "even a CEO is not automatically a 'controlling person' under section 20(a)."  *Id.* at 561 n.9

Furthermore, Plaintiff's conclusory allegation that "each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company" is insufficient because it requires this Court to adopt the "group pleading" doctrine. (Compl. ¶ 82)  But, the PSLRA abolished "group pleading."  *See Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) ("We … hold the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA.").  *See also In re Tyson Foods, Inc.*, 155 F. App'x. 53 (3d Cir. 2005); *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 404 n.49 (D.N.J. 2010) (noting that the Third Circuit has held the PSLRA forecloses the practice of group pleading).  Thus, the Section 20(a) claim must be dismissed because Plaintiff has failed to adequately plead an underlying Section 14(a) claim, and he does not allege facts to establish that the individual directors were controlling persons.

## IV.   PLAINTIFF FAILS TO STATE AN AIDING AND ABETTING CLAIM AGAINST NESS.

Even assuming a company can aid and abet itself, to state an aiding and abetting claim, a complaint must adequately allege both an underlying claim for breach of fiduciary duty and the necessary elements of aiding and abetting. *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1039 (Del. Ch. 2005) (dismissing aiding and abetting claim for two independent reasons: plaintiff "failed to state an underlying claim for breach of fiduciary duty" and "fail[ed] to allege any facts that support an inference that [aiding and abetting defendant] knowingly participated in any breach"). "The standard for an aiding and abetting claim is a stringent one, one that turns on proof of scienter of the alleged abettor." *Binks v. DSL.net, Inc.*, C.A. No. 2823-VCN, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010). As discussed above, Plaintiff has failed to allege any underlying breach of fiduciary duty claim – a fact fatal to his aiding and abetting claim. *Globis*, 2007 WL 4292024, at *15 (dismissing aiding and abetting claim because "this Court has determined that the Complaint fails to state a claim for any underlying breach of fiduciary duty"); *Related Westpac LLC v. JER Snowmass LLC*, C.A. No. 5001-VCS, 2010 WL 2929708, at *8 (Del. Ch. July 23, 2010) ("Furthermore, because the breach of fiduciary duty claim is dismissed, the aiding and abetting claim must also be dismissed."). But even if Plaintiff had stated an underlying breach of fiduciary duty – which he has not – he must still allege facts (not mere conclusions) demonstrating: "(1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) a defendant, who is not a fiduciary, *knowingly participated* in a breach; and (4) damages to the plaintiff resulted from the concerted action of a fiduciary and the nonfiduciary." *Globis*, 2007 WL 4292024, at *15 (emphasis added).

Here, Plaintiff fails to allege any facts demonstrating that Ness "knowingly participated" in any purported breach of fiduciary duty by the Ness Board. Indeed, Plaintiff's

conclusory allegations merely stating that Ness acted with knowledge of a purported breach of fiduciary duty or knowingly aided and abetted the Individual Defendants' wrongdoing are routinely rejected.  *See, e.g.*, *Nebenzahl v. Miller*, C.A. No. 13206, 1996 WL 494913, at *7 (Del. Ch. Aug. 26, 1996) (dismissing claim because plaintiffs alleged only a conclusion that defendant knowingly participated in fiduciary's breach); *In re NYMEX S'holder Litig.*, C.A. Nos. 3621-VCN, 3835-VCN, 2009 WL 3206051, at *12 (Del. Ch. Sept. 30, 2009) ("[C]onclusory allegations such as '[aiding and abetting defendant] had knowledge of the [fiduciary d]efendants' fiduciary duties and knowingly and substantially participated and assisted in the [fiduciary d]efendants' breaches of fiduciary duty, and therefore, aided and abetted such breaches of fiduciary duties' are insufficient as a matter of law.") (brackets in original).  So too here.[9]

---

[9]   Plaintiff's claims against CVCI, the Jersey Holding Corporation, and the Jersey Acquisition Corporation for aiding and abetting fail for the same reasons set forth in this section and should be dismissed as well.

## CONCLUSION

For the foregoing reasons, the Ness Defendants' motion to dismiss should be granted, and the Complaint should be dismissed with prejudice.

/s/ Andrew Muscato
Robert J. Del Tufo
Andrew Muscato
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
(A Delaware Limited Liability Partnership)
Four Times Square
New York, New York  10036
Tel.:  (212) 735-3000
Fax:  (212) 735-2000

**OF COUNSEL:**

John D. Donovan, Jr.
Brendon O. Carrington
ROPES & GRAY LLP
Prudential Tower
8000 Boylston Street
Boston, Massachusetts  02199-3600
Tel.:  (617) 951-7566
Fax:  (617) 235-0023

*Attorneys for Defendants Satyam C. Cherukuri,*
*P. Howard Edelstein and Morris Wolfson*

Edward P. Welch
Robert S. Saunders
Ronald N. Brown, III
Arthur R. Bookout
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.: (302) 651-3000
Fax: (302) 651-3001

*Attorneys for Defendants Ness Technologies*
*Inc., Satyam C. Cherukuri, Issachar "Sachi"*
*Gerlitz, Morris Wolfson, Dan S. Suesskind, P.*
*Howard Edelstein and Gabriel Eichler*

DATED:  July 21, 2011

30